416 So.2d 91 (1982)
STATE of Louisiana
v.
Melvin WILLIAMS.
No. 81-KA-3158.
Supreme Court of Louisiana.
June 21, 1982.
*92 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Dandall Green, Nancy Sharpe, William P. Campbell, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Dwight Doskey, Walter L. Sentenn, Jr., Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
ROBERT L. LOBRANO, Justice ad hoc.[*]
On August 18, 1981 defendant, Melvin Williams was charged by bill of information with possession of a firearm as a convicted felon, in violation of La.R.S. 14:95.1. After the trial court denied his motion to suppress, defendant pled guilty to the charge, reserving his right to appeal the denial of his motion. Thereafter, he was sentenced to three years at hard labor. Defendant now appeals on the basis of one assignment of error, that the trial court erred in denying his motion to suppress the firearm.
STATEMENT OF FACTS
The record reflects that the sole evidence presented at the motion to suppress was the testimony of the two police officers who apprehended defendant. Their testimony shows the following facts. On July 30, 1981, at approximately 1:00 a.m., Officers Selby and Corales were patrolling in an unmarked police car. As they approached the intersection of St. Ann and Roman Streets in the City of New Orleans, they observed the defendant sitting in the driver's seat of a green Chevrolet parked in the middle of Roman Street with the lights off. The officers then observed a Negro male (one Terry Marchand) run from the bar on the corner and get into the passenger side of the car. Officer Corales testified that, although he wasn't positive, it appeared that Marchand was holding something. Just as the car's engine started up and the lights were turned on, Officer Selby jumped out of the police car and ran toward the intersection. At that point in time, both officers suspected that an armed robbery or some other crime may have been committed. Officer Selby ran toward the moving car waving his ID and shouting "Police! Stop!" The car continued coming in his direction, at which time Officer Corales positioned the police vehicle so as to prevent defendant's car from striking Officer Selby. As a result, the two cars locked bumpers. Defendant then attempted to back up his car unsuccessfully. Officer Corales got out of the police car and told Officer Selby that he recognized the driver of the car (defendant) and that he was possibly "wanted". Officer Selby continually ordered defendant to get out of the car but defendant refused to obey. Officer Corales, in the meantime, *93 had already escorted Marchand from the passenger side to the rear of the car. As Officer Selby approached the driver's side, defendant moved his hands from the steering wheel down to his waist area and slowly opened the car door. Officer Selby approached cautiously and noticed that defendant had a cast on his leg as he alighted from the car. As Officer Selby escorted defendant out of the car, he noticed a blue steel revolver on the floorboard where defendant was seated. Officer Selby did not seize the gun at this time, but instead proceeded to take defendant to the rear of the car where Officer Corales had been detaining Marchand. The officers asked defendant for his driver's license, which he failed to produce. Thereupon he was placed under arrest for driving without a license. Officer Selby then retrieved the gun from the floorboard of defendant's car.
ASSIGNMENT OF ERROR
Defendant argues that the trial court erred in denying his motion to suppress the gun seized from his car. Specifically, he contends that merely observing an individual running from a place of business to a waiting car does not constitute a cause sufficient to justify a forcible stop.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is well recognized in our statutory law, as well as federal and state jurisprudence. La.C.Cr.P.Art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Cook, 332 So.2d 760 (La.1976). Specifically our Code of Criminal Procedure provides:
"A. A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdeameanor and may demand of him his name, address and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article, and reasonably suspects that he is in danger of life or limb, he may search the outer clothing of such person for a dangerous weapon or for any other thing the possession of which may constitute a crime.
C. If the law enforcement officer finds a dangerous weapon or any other thing the possession of which may constitute a crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person." La. C.Cr.P.Art. 215.1

In determining the rights granted to police officers under the above cited article, this Court has consistently stated that the officers must have reasonable cause to stop and question the particular individual detained, including reasonable belief justified by action on the part of the detainee that he has been, or is about to be engaged in criminal conduct. State v. Cook, 332 So.2d 760 (La.1976). The reasonable cause sufficient to justify an investigatory stop is somewhat less than the probable cause needed for a full custodial arrest. As was stated by this Court in State v. Chopin, 372 So.2d 1222, 1224 (La.1979);
"[R]easonable cause is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference."
In the instant case, Officers Selby and Corales infringed upon defendant's right to be free from governmental interference when Officer Selby jumped from the police vehicle, ran towards defendant's car, and ordered him to stop. This action by the officers must be weighed in light of the facts and circumstances of this particular case. Although the facts of other cases may be somewhat relevant in deciding the present issues, it is well settled each case must stand on its own.
In State v. Wade, 390 So.2d 1309 (La. 1980) defendant's immediate flight through *94 a "high crime area" upon seeing an unmarked police vehicle constituted reasonable cause for an investigatory stop. In State v. Cook, 332 So.2d 760 (La.1976), a police officer in an unmarked vehicle saw defendant, otherwise unknown to him, standing with his back against the corner of a building, peeking surreptitously around it several times. When defendant started walking up the street, the officer followed, and upon seeing other officers in civilian clothes displaying their badges the defendant walked away. This was sufficient to justify an investigatory stop. In State v. Chopin, 372 So.2d 1222 (La.1979) we held that the police officers did not have the right to make an investigatory stop of a person who was walking in a well-lit, well-traveled area carrying a brown paper bag and who became "kind of nervous" upon catching sight of a patrol car. This court has also considered the actions of a defendant in attempting to escape after the police officer turned on his red light and sounded his horn in upholding an investigatory stop. State v. Dupart, 383 So.2d 1226 (La.1979).
The factual situation in this case can best be summarized by the following response given by Officer Selby under cross-examination.
"As we approached the intersection we saw a car parked in the middle of the street with its lights off with the subject inside the vehicle. As we approached closer, we observed the subject run very hurriedly. Not a trot. I mean run and sprint away from a building, which drew some suspicion to our minds that possibly something had occurred or taken place."
A police officer has the right to make an investigatory stop under suspicious circumstances. Certainly a person running from a bar at 1:05 A.M. in the morning to a car parked in the middle of the street with its lights off creates a sufficient "suspicious" atmosphere to warrant such a stop.
We therefore conclude that the trial court was correct in denying the motion to suppress, and therefor affirm the conviction and sentence.
NOTES
[*] Judges William Norris, III. and Fred C. Sexton, Jr., of the Court of Appeal, Second Circuit, and Judge Robert L. Lobrano of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Lemmon.