444 So.2d 1337 (1984)
STATE of Louisiana, Appellee,
v.
Danny GOODSON, Appellant.
No. 15660-KA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
Rehearing Denied February 23, 1984.
Writ Denied April 13, 1984.
*1338 Donald R. Minor, Indigent Defender Office, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Robert W. Gillespie, Jr., Asst. Dist. Atty., Shreveport, for appellee.
Before HALL, MARVIN and SEXTON, JJ.
MARVIN, Judge.
After a change of venue because of the notoriety given to the violent activities of the Highland Rapist in Shreveport in 1981, defendant Goodson, who was indicted for an aggravated rape occurring in the Highland area, was convicted of forcible rape by a jury in Ouachita Parish. LRS 14:42.1.
In this appeal of his conviction and sentence, Goodson contends that inculpatory statements he made while in custody should have been suppressed because the police did not have "probable cause" to arrest him and because the statements were "induced," contrary to LRS 15:451. In his second assignment, Goodson contends that his sentence to the maximum term for forcible rape was constitutionally excessive and was not justified because the trial court considered other indictments for rapes that were pending against Goodson. We affirm the conviction and the sentence.
In response to the series of rapes occurring in the Highland area during 1981, the Shreveport police had organized their efforts to apprehend the rapist and had made known the general description and modus operandi of the rapist which had been reported by other victims. About one a.m. on September 7, 1981, the victim of this crime, who lived in the Highland area, telephoned Shreveport police to report the crime. A second telephone call was made minutes later by another woman, also from her home in the Highland area of Shreveport, who reported that someone was attempting to break into her home.
The description of the rapist given by the victim in this caseblondish brown hair, broad shoulders, stocking mask, blue denim jacket, dark pants, and shoes like tennis shoesconformed to the description already known to the police. The police radio simply broadcast the occurrence and location of the crime with the description that it looked like "the Highland boy again." Reaction teams of police that had been organized to apprehend the Highland Rapist sprang into action.
One officer on a team assigned to secure the four-block area around the victim's home saw a man running in the area and reported this by radio. Another officer-detective on the team, who was in an alley within a block of the victim's home, heard this broadcast and saw a person appear from the shadows in the alley and abruptly run away. This detective gave chase, yelling "Stop! Police! Stop! Police!" Another officer, hearing the shout of the detective, spotted defendant and ran after him, eventually catching defendant three or four blocks away after defendant had jumped a fence and into the back yard of a residence. The detective and other officers quickly arrived, arrested, and handcuffed Goodson and gave him the required Miranda warnings. LSA-Const. Art. 1, § 13.
*1339 Goodson was then immediately taken to the police station where he made, at different times, three detailed and recorded inculpatory statements to police after again being given Miranda warnings. In these statements, Goodson confessed to the rape of the victim in this crime, to the attempted break-in of the home of the other woman, and to at least a dozen other rapes and numerous burglaries which had occurred in the Highland area during the preceding eight months. Goodson also gave a recorded statement to Bossier City detectives which resulted in his being convicted in Bossier Parish of the crime of aggravated rape before the trial of this case.
Goodson's counsel argues that while the police might have had a reasonable suspicion or reasonable belief under CCrP Art. 215.1 to stop and interrogate Goodson, they did not have the reasonable [probable] cause required under CCrP Art. 213 to arrest him without a warrant.[1]

UNLAWFUL ARREST?
In addition to the circumstances detailed above, the detective who had initiated the chase and who immediately caught up with Goodson after the other officer apprehended him, noticed that Goodson's tennis shoes had the distinctive and, to him, the familiar, sole design of one or more shoe prints found in the area of other rapes and burglaries in the Highland area.
Goodson was apprehended within about 13 minutes of the victim's report to the police and within three or four blocks of the victim's home. A glove found on the fence over which defendant jumped matched a glove found on defendant's other hand when he was caught. A flashlight and screwdriver protruding from Goodson's pocket were seized by the police. No other stranger was seen in the area under surveillance by the police. Defendant was wearing clothing and shoes of the type described by victims of earlier rapes in the area. Goodson contends that these factors, which support probable cause, are mitigated by the fact that the police were dressed in plainclothes, that a german shepherd attack dog was turned loose and growled at him when the chase started, and that Goodson and the public knew that unauthorized "vigilantes" sometimes voluntarily patrolled the neighborhood because of the frequency of rape and burglary in the area. The detective who initiated the chase testified that because of the darkness in the alley, he was "not even sure [he] could have told ... it was a white male or black male at the time we started chasing him."
Goodson argues then that the detective-arresting officer did not have articulable knowledge of particular facts to meet the reasonable suspicion or reasonable belief of the stop and interrogate article or to meet the reasonable cause-probable cause of the arrest without a warrant article. We cannot agree. Factors that defendant overlooks are also important to the determination, which must be made on a case to case basis from the totality of the particular circumstances. State v. Flowers, 441 So.2d 1288 (La.1983).
The totality of the circumstances of the particular case determine whether the requisite belief exists in either case, but several factors are often emphasized in cases making the determination. See State v. Williams, 416 So.2d 91 (La.1982); State v. Johnson, 422 So.2d 1125 (La.1982); State v. Bailey, 410 So.2d 1123 (La.1982); State v. Collins, 378 So.2d 928 (La.1979).
Was the area a "high crime area?" The frequency and notoriety of rapes and burglaries in the Highland area answer affirmatively.
*1340 The time of day? It was one o'clock in the morning.
Frequency of other persons in the area? No other stranger was seen in the four block area under surveillance.
Any suspicious activity or flight of the suspect? Goodson was running when the first officer spotted him. Goodson retreated into the shadows of the alley and ran when the detective spotted him and yelled at him to stop.
Had a crime been reported before the stop or the arrest? Yes, by two different possible victims in the area.
Other factors? The arresting detective was familiar with the distinctive shoe sole of the tennis shoes worn by Goodson and with the general description and m.o. of the Highland rapist. Goodson's appearance, shoes, jacket, gloves, and flashlight corresponded to the descriptions which had been given to the police by other persons.
Under these circumstances, reasonable cause to detain and interrogate Goodson existed and immediately ripened into probable cause to arrest when Goodson fled and was forcibly stopped and observed by the officers. Goodson's complaint of being immediately handcuffed is also without merit. Where reasonable suspicion or reasonable belief for a CCrP 215.1 stop exists and the person whose temporary detention is requested attempts to evade or to flee from such detention, a police officer may use reasonable force to effect the detention, just as he may use reasonable force to effect an arrest. See CCrP Art. 220. The officers who were on the apprehension team knew that some victims of earlier rapes had reported that the Highland rapist was armed with a knife. Under the circumstances shown, the officer who first stopped Goodson's flight did not use unreasonable force in stopping him or in immediately handcuffing him. The detective who arrived a second or so later had probable cause to formally arrest Goodson after more closely observing the things mentioned in the light of that detective's earlier knowledge of the appearance and m.o. of the rapist. We find no merit in Goodson's contention that his arrest was unlawful.

CONFESSIONS INDUCED?
Defendant signed numerous Miranda acknowledgments once he was in custody. He gave three recorded statements to Shreveport police and one to Bossier police and in each instance acknowledged his Miranda rights and that he was voluntarily making the statements, without being subjected to force or intimidation or promises of anything. Additionally, Goodson signed consent forms volunteering saliva, blood, and other samples from his person and consenting to a search of his residence and vehicle. Goodson admitted to "at least a dozen" rapes in the Highland area of Shreveport and at least one in Bossier. He confessed to at least one rape that was never reported to police by the victim. He denied some other rapes, and particularly some very violent ones, about which he was questioned.
To be admissible against a defendant, a confession must be shown to a confession must be shown to have been freely and voluntarily made without the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. LRS 15:451; State v. Jackson, 381 So.2d 485, 487 (La.1980). See also State v. Hall, 434 So.2d 517 (La.App. 2d Cir.1983).
The trial court obviously did not accept defendant's version that his confession was made because he was promised psychiatric help or induced to believe that he would get such help if he cooperated with the police. Goodson was told by detectives who questioned him during his first confession that he did not fit their expectations of him as a hardened and vicious type rapist and he was told by the chief of detectives during a later confession that the detectives who had been questioning him would "treat him right." When these comments are considered as a part of the total circumstances surrounding all of Goodson's statements, they cannot be said to be promises or inducements within the purview of LRS 15:451. Compare the remarks in other cases discussed in State v. Hall, supra, where statements to a defendant such as, "anybody who tried to help themselves *1341 usually got help" and "things would go easier" if cooperation was shown, were held not to constitute promises or inducements within the statutory purview in particular circumstances. We find no merit to Goodson's contention that his confessions were induced. Goodson's confessions were admissible.

SENTENCE ERROR?
Contending that the sentence is excessive, Goodson emphasizes the "erroneous" conclusion of the sentencing judge that there were no mitigating circumstances. He suggests that the jury found mitigating circumstances by returning the lesser verdict of forcible rape instead of guilty as charged of aggravated rape and that the court's consideration of the other indictments against Goodson permits punishment to be exacted without the requisite conviction for those crimes. Again, Goodson misconstrues the law and the totality of circumstances shown in this record.
While there is truth in the adage that punishment should "fit" the crime, the law requires that the punishment be individualized to "fit" the defendant. State v. Jackson, 360 So.2d 842 (La.1978); State v. Cruz, 430 So.2d 161 (La.App. 2d Cir.1983). The court noted its sentencing considerations and the record illumines other factors within the CCrP Art. 894.1 guidelines. The court mentioned the relatively young age of defendant (28), the circumstances of the crime and the defendant's criminal history, his admission to a dozen rapes and his conviction in Bossier Parish of aggravated rape.
CCrP Art. 894.1 provides criteria for the determination whether a particular sentence is constitutionally excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). The sentencing judge has much discretion in applying these and any other relevant factors. State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983). Imposition of the maximum sentence in any case must be "justified" by the particular circumstances of the crime as well as of the individual defendant. See State v. Telsee, 425 So.2d 1251 (La.1983).
While the factors of CCrP Art. 894.1 are placed in two categories, this categorization into aggravating and mitigating circumstances does not limit the trial judge's wide discretion. Hammonds, supra. For instance, the fact that a defendant has no history of prior criminal activity and has led a law-abiding life for a substantial period of time is expressly made a mitigating factor which the trial court shall consider. Art. 894.1 B(7) The converse of this fact [that the defendant has a recent criminal history] certainly is an aggravating type factor which the trial court may consider in imposing sentence. The sentencing guidelines direct the trial court's consideration to many factors which, whether expressed or implied in terms of aggravation or of mitigation, may assist the court in individualizing the sentence of the particular defendant. We find that the maximum sentence was justified for this particular defendant and is not constitutionally excessive.
Conviction and sentence are AFFIRMED.
NOTES
[1] In response to the stop and frisk principle recognized in Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Louisiana Legislature enacted CCrP Art. 215.1, originally by Act 305 of 1968. That statute required a reasonable suspicion. Act 686 of 1982 changed the language of Art. 215.1 to require a reasonable belief by the officer that the person whose temporary detention is sought had committed an offense. This standard, in either terminology, is less than the reasonable [probable] cause for arrest without a warrant under CCrP 213(3).