CRAIN, Judge.
Defendant, Brian Keith Howard, was charged by bill of information with armed robbery, in violation of La.R.S. 14:64. He pled not guilty and, after a jury trial, was found guilty as charged. Defendant was sentenced to fifty years at hard labor without benefit of parole, probation or suspension of sentence, with credit for time served. This appeal follows.
FACTS:
On January 8, 1992, defendant took money at gunpoint from Susan Billiot, an employee at the Shop Rite in Houma. The following facts were revealed at trial. Susan Billiot testified that she was working the night shift at the Shop Rite on January 8, 1992. Between 11:30 and 11:45 p.m., a black male wearing a jacket that looked like a windbreaker with white pinstripes came into thp store. He got a roll of Rollo candy and brought it up to the register. As Ms. Billiot rang it up, the man pulled a gun and said, “Give me everything you got”. She panicked and couldn’t get the register open. Defendant said, “I will shoot you”. When Ms. Billiot finally got the register open, the man grabbed the money and ran off. Two days later, based on descriptions and other information, defendant was arrested.
ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO:
In these assignments of error, defendant alleges that the trial court erred by permitting the state to make defendant model a jacket for the jury. Defendant contends that the victim never identified the jacket and that the prejudice caused to defendant by his modeling the jacket outweighs any probative value. Specifically, in his brief, defendant contends that the jury was led to believe that the jacket belonged to defendant and that any probative value it might have is outweighed by its prejudicial effect.
During Ms. Billiot’s testimony, she described the man who robbed her as between 5'7 and 5'9, weighing 180-200 pounds with long curly eyelashes and a broad nose. Ms. Billiot further testified that the man who robbed her was wearing baggy jeans and a jacket that resembled a windbreaker, although it was made of cloth and not windbreaker material. The jacket was black with white stripes and had an “X” on the back. When the prosecutor held up the jacket in court, she identified it as the same jacket worn by the man who robbed her. Ms. Billiot testified that the robber’s gun was “a 9-millimeter automatic.”
Officer Joseph Estrada of the Houma Police Department testified that he heard about the robbery on his ear radio and immediately *878 went to the vicinity of the Shop Rite. He saw a man, turned on his lights, got out of his unit and drew his gun. The man took off running in high grass which was wet and muddy. Officer Estrada radioed his location to other units and kept watching the man in the high grass. A K-9 unit found a jacket about 15 feet from where the man had been. Estrada identified the jacket the prosecutor held up in court as the same jacket found that night in the grass.
Initially, we note that, contrary to defendant’s assertion in brief, the victim, Ms. Billi-ot, identified the jacket held up by the prosecutor in court as the jacket worn by the perpetrator that night. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action, more probable or less probable than it would be without the evidence. La.C.Ev. art. 401. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. La.C.Ev. art. 403. In questions of relevancy, much discretion is vested in the trial court. Such rulings will not be disturbed on appeal in the absence of a showing of abuse of discretion. State v. Johnston, 546 So.2d 1231, 1238 (La.App. 1st Cir.1989).
In the instant case, defendant’s modeling the jacket was relevant to demonstrate whether or not the jacket fit him. We do not find that the trial court abused its discretion. For the reasons herein stated, these assignments of error are meritless.
ASSIGNMENT OF ERROR NUMBER THREE:
In this assignment of error, defendant contends that the trial court erred in denying his motion for a mistrial. Specifically, defendant contends that he did not receive La.C.Cr.P. art. 768 notice of inculpato-ry statements.
Tony Barrow, a Holiday Inn employee, was working as front desk supervisor from 11:00 p.m. to 7:00 a.m. on the night of the incident. He testified that defendant came into the motel lobby to use the telephone at around 1:00 a.m. and told him that he had been in an accident. At that point in the testimony there was a side bar conference. The jury was removed. At the conclusion of the side bar conference, defense counsel moved for a mistrial on the basis that Barrow was going to testify that defendant had told him that he had been in an accident as a way of explaining why he was wet and muddy. Defense counsel argued that this statement, in combination with Officer Estrada’s testimony about the man he was watching running through grass that was wet and muddy, is inculpatory. He further argued that, because of Barrow’s testimony, defendant would have to take the stand to explain that his being wet and muddy was due to his having been in an accident. Defense counsel argued that, although he was given open file discovery, the content of Barrow’s testimony caught him completely by surprise. In his brief, defendant contends that he should have been given art. 768 notice of intent to use inculpatory statements.
La.C.Cr.P. art. 768 provides, “Unless the defendant has been granted pretrial discovery ...” the state shall advise the defendant in writing of the stated intent to introduce a confession or inculpatory statement. We note that defense counsel stated on the record that he had been granted open file discovery. Therefore, under art. 768, the state was not required to give defendant notice. Further, defense counsel read into the record the statement from Tony Barrow that he had been given during discovery. That statement contained the same information to which Barrow testified in court. Defense counsel could not have been surprised by the content of Barrow’s testimony because it was the same as contained in the statement supplied to the defense during discovery. Therefore, the trial court did not err by denying defendant’s motion for a mistrial. For the reasons herein stated, this assignment of error is meritless.
ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment of error, defendant alleges that he should have been granted a new trial. In his brief, defendant argues that all of the errors committed by the trial court, when added up, require the granting of a new trial. Defendant’s argument is a *879 reference to the other assigned errors addressed herein. We have already discussed assignments of error numbers one through three and found them meritless. As will be revealed, we find no merit to assignment of error number five and assignment of error number six relates to sentencing, not a trial error. Therefore, we find no merit to defendant’s cumulation of errors argument.
ASSIGNMENT OF ERROR NUMBER FIVE:
In this assignment of error, defendant contends that his motion for post-verdict judgment of acquittal should have been granted. He argues that the verdict was contrary to the law and the evidence, which is actually a sufficiency of the evidence argument.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See La. C.Cr.P. art. 821; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Defendant was convicted under the provisions of La.R.S. 14:64, which makes it unlawful for anyone to take anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
The victim, Susan Billiot, stated that she was able to see the robber’s face. She described the robber’s eyelashes as long and curly and stated he had a broad nose. Ms. Billiot testified that, the same night as the robbery, she looked at a photographic lineup twice and both times identified defendant as the robber. In court, Ms. Billiot identified defendant as the man who robbed her. Ms. Billiot stated that there was no doubt in her mind that defendant is the man who robbed her. She further stated that she got a good look at his face and will never forget the face of the man who threatened to kill her.
Officer Joseph Estrada of the Houma Police Department testified that he was able to see the face of the man in the vicinity of the Shop Rite, who took off running, when Estrada was answering the robbery call. Estrada testified that defendant was the man he saw running after the robbery. He further testified that, later at the station, he picked defendant out of a photographic lineup.
Officer Troy Naquin of the Houma Police Department testified that he prepared a photographic lineup that included defendant and five other men with similar characteristics. He showed the lineup to Officer Estrada, who picked out defendant. Officer Naquin testified that Officer Estrada did not hesitate and that he (Naquin) did not coach Officer Estrada in any way to make the selection.
Officer Naquin further testified that he took the lineup to the Shop Rite approximately one hour after the robbery. He asked Ms. Billiot to look at it but didn’t tell her that a possible suspect was included. Officer Naquin testified that, although Ms. Billiot appeared to be unsure about her choice the first time she looked at the lineup, she chose defendant. While the store manager was looking at the lineup, Ms. Billiot looked on and, again, identified defendant. He did not tell the manager that a possible suspect was included in the lineup.
In addition to the direct evidence, there is circumstantial evidence to support defendant’s conviction.- Ms. Billiot testified that the man who robbed her was wearing acid washed jeans and a black jacket with white pinstripes that looked like a windbreaker, although it was made of cloth. The jacket had an “X” on the back. During the trial Ms. Billiot identified a jacket and a pair of jeans as those worn by the man who robbed her.
Officer Estrada testified that, in response to a call about a robbery, he proceeded to the vicinity of the Shop Rite and found a man who “took off running.” In addition to Officer Estrada’s testimony that he saw the face of the man and it was that of defendant, Officer Estrada testified that the man was wearing jeans and a “blue multicolored sweater.” Officer Estrada identified the jeans and the sweater in court. He further testified that a K-9 unit found a jacket, just like Ms. Billiot described, in the area where *880 the man was running. Officer Estrada identified the jacket in court.
Tony Barrow, who was working at the Holiday Inn that night, testified that defendant came in to make a telephone call wearing jeans and a “purplish sweater.” In court, he identified defendant as that man as well as the jeans and the sweater. Officer Na-quin testified that the telephone number the man called from the Holiday Inn was that of defendant’s father. Detective Johnny Lopez of the Houma Police Department testified that, when he reported for work on the day after the robbery, he was informed that the Sheriffs Department had been called to the Holiday Inn the previous night in response to an accident and that defendant had been taken to the hospital. He was sent to the hospital to arrest defendant. When Detective Lopez arrived at the hospital, defendant was unconscious; and he saw the hospital personnel cut the clothes from defendant’s body. Detective Lopez stated that defendant was wearing jeans and a blue sweater, and he identified those items in court. He returned the next day to arrest defendant upon his release from the hospital.
Milton Singleton, a friend of defendant’s, testified that he and defendant were riding around and drinking on the night of the robbery. He dropped defendant off at the Turning Point Lounge and then he went on and eventually stopped at the Shop Rite to buy gas. While he was pumping the gas, a lady came outside and told him she had been robbed. He saw a man running away who was wearing black jacket. He described the man as being 6'2 and weighing about 200 pounds. Singleton testified that, when he and defendant were together, defendant was not wearing a jacket. Singleton testified that he did not think that the man he saw running was defendant because he didn’t think defendant could have beaten him to the Shop Rite. He stated that he was not able to tell if the man he saw running away from the store was black or white.
Defendant’s mother testified that defendant lives with her and does not own a jacket like the one in evidence. She also testified that defendant receives about $422 per month in Supplemental Security Income from the Social Security Administration and that he does not work.
Where the key issue is defendant’s identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989). The credibility of the testimony of a witness is a matter of the weight of the evidence. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d at 524; State v. Patterson, 540 So.2d at 518. In the instant case, the jury must have believed the testimony of the state’s witnesses. After a careful review of the record and the evidence, we find that there is sufficient evidence to uphold defendant’s conviction.
ASSIGNMENT OF ERROR NUMBER SIX:
In this assignment of error, defendant alleges that his sentence is excessive. Specifically, defendant contends that, under the new sentencing guidelines, his sentencing range is from 6 to 8½ years and he was sentenced to 50 years. Immediately after sentencing, defense counsel orally moved for the court to reconsider the sentence, and his motion was denied.
Initially, we note that this court will not set aside a sentence due solely to the trial court’s failure to impose the sentence in conformity with the new sentencing guidelines. See La.C.Cr.P. arts. 881.6 and 894.1A. See also La.C.Cr.P. art. 881.4D. Furthermore, this Court will not set aside a sentence on the ground of excessiveness if the record supports the sentence imposed. See La. C.Cr.P. art. 881.4D.
During the sentencing, the trial court stated that it was aware of the new sentencing guidelines and considered them to be adviso *881 ry. The trial court stated that this offender’s conduct during the commission of the crime manifested deliberate cruelty to the victim because he repeatedly told her that he would kill her. The court noted that the offense has resulted in mental suffering for the victim. The court further stated that the offender knowingly created a risk of death or great bodily harm to more than one person because convenience stores are frequented by many people and there were others around at the time of the offense. Finally, the court noted that the offense was committed with a 9 mm pistol which is a very dangerous weapon.
After a careful review of the record, we find that it supports the sentence imposed. Therefore, for the reasons herein stated, this assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.