696 So.2d 240 (1997)
STATE of Louisiana, Appellee,
v.
Charles R. JONES, Defendant-Appellant.
No. CR96-1581.
Court of Appeal of Louisiana, Third Circuit.
June 4, 1997.
Rehearing Denied September 5, 1997.
*242 J. Reed Walters, Dist. Atty., for State.
Edward K. Bauman, Lake Charles, for Charles R. Jones.
Charles R. Jones, pro se.
Before COOKS, WOODARD and AMY, JJ.
AMY, Judge.
This consolidated appeal[1] arises from the conviction of Defendant, Charles R. Jones, for first degree robbery, a violation of La. R.S. 14:64.1. For this conviction, the defendant was sentenced to forty years at hard labor without the benefit of parole, probation, or suspension of sentence. However, subsequent to the first degree robbery conviction, the defendant was adjudicated an habitual offender, a violation of La.R.S. 15:529.1. As such, the defendant was sentenced to imprisonment for the rest of his natural life, without the benefit of probation, parole, or suspension of sentence, and the forty-year sentence for first degree robbery was vacated. The defendant now appeals both the first degree robbery and habitual offender convictions and the life sentence. We affirm.

DISCUSSION OF THE RECORD
The instant matter arose from an armed robbery which occurred at the Airport Grocery in Jena, Louisiana on June 29, 1995. Ms. Jeanette Brown, who was working in the store on the morning of the robbery, testified that, at 7:22 a.m. on that date, a masked gunman entered the store. She stated that he proceeded to the back of the store where she was working, pushed her to the front of the store, and demanded that she open the cash register and give him the money. She testified that, after she did so, the robber ran from the store. Ms. Brown testified that, despite the ski mask worn by the robber, she recognized him as the defendant, Charles R. Jones. She stated that she was able to do so by his voice and his build.
The record reveals that Deputy Lane Windham and Deputy David Smith of the LaSalle Parish Sheriff's Office responded separately to the call regarding the robbery. Deputy Windham testified that he arrived first, spoke with Ms. Brown, and was soon joined by Deputy Smith. Deputy Smith testified that he took a field interview from Ms. Brown and then proceeded to take her to the sheriff's office to get a taped statement. However, the record reveals that, on the way to the sheriff's office, the deputy and Ms. Brown saw the defendant traveling along the road on a bicycle. Detective Smith stopped the car and attempted to question the defendant, who fled. The defendant was apprehended a few minutes later. The record reveals that money was recovered from the scene of the arrest.
The defendant was charged by bill of information with armed robbery, a violation of La.R.S. 14:64. On August 3, 1995, Defendant appeared before the court, was arraigned and entered a plea of not guilty to the charge. Following an April 1996 jury trial, the defendant was found to be guilty of first degree robbery and was sentenced to serve forty (40) years at hard labor without benefit of parole, probation or suspension of sentence on that charge. Additionally, a habitual offender bill was filed against the defendant on May 16, 1996. After a contradictory hearing, the defendant was sentenced as a habitual offender to life without benefit of probation, parole or suspension of sentence. The original forty-year sentence for first degree robbery was vacated.
The defendant now appeals his conviction for first degree robbery, adjudication as a *243 habitual offender, and life sentence assigning the following as error: 1) The jury's verdict with regard to the conviction for first degree robbery is contrary to the law and evidence; 2) The trial court erred in failing to suppress the evidence seized at the time of the defendant's arrest; 3) The trial court erred in refusing to grant trial counsel's Motion to Withdraw; 4) The trial court erred in failing to suppress tainted evidence related to the defendant's identification; and 5) The trial court erred in imposing an excessive sentence. With regard to the habitual offender adjudication, the defendant argues that the conviction is not supported by sufficient evidence. Additionally, the defendant filed four pro se assignments in which he maintains the following: 1) The trial court erred in retroactively applying the current version of La.R.S. 15:529.1 which mandates a life sentence rather than the version in effect at the time of the crime's commission which only permits a life sentence; 2) The trial court erred in refusing to allow the defendant to impeach Ms. Brown's testimony through the testimony of Detective Windham; 3) The trial court erred in refusing to allow the defendant to ask specific questions of Ms. Brown, Detective Windham, and Sheriff Garifo; and 4) The trial court erred in failing to suppress the identification of the defendant.

Error Patent
The scope of review on appeal includes all errors designated in the assignment of errors and any error that is discoverable by merely inspecting the pleadings and proceedings. La.Code Crim.P. art. 920. Our review of record reveals one possible error patent.
Although the right to remain silent is not specifically set forth in La.R.S. 15:529.1, the supreme court has held that this statute clearly recognizes the defendant's right to remain silent and have the State prove its case. State v. Johnson, 432 So.2d 815 (La. 1983), writ granted on other grounds, 438 So.2d 1113 (La.1983), appeal after remand, 457 So.2d 1251 (La.App.1984), 471 So.2d 1041 (La.App.1985). The statute implies that the court shall advise the defendant of this right. Johnson, 432 So.2d 815.
The record does not reflect that the defendant was informed of his right to remain silent at his September 9, 1996, hearing on the habitual offender bill of information, nor does the record reflect that the defendant entered a plea at the arraignment to the habitual offender charge. Neither the minutes nor the transcript of that arraignment are in the record, and thus, we cannot determine whether the defendant was informed of his right to remain silent at his arraignment. However, we find even if the defendant was not informed of his right to remain silent at his arraignment, any error resulting from this failure is harmless.
This court has concluded that only harmless error results when a defendant remains silent throughout the proceeding and the State presents competent evidence to prove his identity. State v. Hodges, 94-898 (La. App. 3 Cir. 3/1/95), 651 So.2d 487. The defendant neither acknowledged his prior offenses nor admitted the truth of the allegations contained in the habitual offender bill of information whereas the State presented the court with competent evidence as to the defendant's identity and prior convictions. First, the State introduced the minutes, bill of information, plea form, plea colloquy, and sentencing transcript from the defendant's second degree battery conviction. Additionally, the State introduced the minutes, bill of information, and plea colloquy from the defendant's simple burglary conviction. Finally, the State introduced the minutes, bill of information, plea colloquy, and sentencing transcript from Defendant's simple robbery conviction.
We conclude that, as the defendant remained silent throughout the proceedings, the State presented sufficient competent evidence to adjudicate the defendant a fourth offense habitual offender such that if the defendant was not advised of his rights, the omission constituted harmless error.

Sufficiency of the EvidenceFirst Degree Robbery
The defendant claims that the verdict of the jury is contrary to the law and evidence in that there was insufficient evidence, when viewed in a light most favorable to the prosecution, for the jury to find the defendant *244 guilty of first degree robbery beyond a reasonable doubt.
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. The defendant was convicted of first degree robbery, a violation of La.R.S. 14:64.1 which states:
A. First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
The primary evidence presented by the State was the testimony of Ms. Brown who had been employed as the cashier at Airport Grocery for the past fifteen (15) years. As previously discussed, she testified that the defendant robbed the store at 7:22 a.m. Additionally, she stated that the defendant had come into the store on several occasions over the years and that she recognized him by his shape, build, walk and voice, despite that he was wearing a ski mask at the time of the robbery. She described the robber's clothing as a black sweatshirt over a white Tshirt, "blackish gray baggy pants" which were worn over navy blue or black pants, and brown work boots. She added that there was a white label from the navy pants sticking out over the grayish black "britches." When asked about her state of mind during the robbery, Ms. Brown stated that she was trying to stay alive and "be able to identify who did it."
Detective David Smith took Ms. Brown to the police station after the robbery. On the way to the station, Ms. Brown saw the defendant riding a bicycle down the road and identified the defendant as the robber. Ms. Brown testified that she was missing $320.00, excluding change, from the cash register. At trial, Detective Smith stated that at the scene of the defendant's arrest, he recovered $72.00 and Deputy Windham recovered $248.00, which totaled $320.00. Despite a lack of distinguishing characteristics or markings, Ms. Brown identified the money recovered as the money taken in the robbery.
Where the key issue is defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989). The credibility of the testimony of a witness is a matter of the weight of the evidence. State v. Payne, 540 So.2d 520, 524 (La. App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d at 524; State v. Patterson, 540 So.2d at 518.
State v. Howard, 634 So.2d 876, 880 (La.App. 1 Cir.1993), writ denied, 94-0055 (La.4/7/94), 635 So.2d 1133.
Ms. Brown consistently identified the defendant as the perpetrator. The jury, as the trier of fact, apparently found Ms. Brown's testimony credible. This determination of the weight given to Ms. Brown's testimony is not now a proper subject for appellate review.
The defendant claims that the testimony of Ms. Brown is "skeptical and incredible" since no fingerprints were taken from the cash register or the recovered money, which had no distinctive markings, and no ski mask or gun was recovered. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438.
Additionally, the supreme court has stated the following:
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a *245 reasonable doubt that defendant was guilty of every essential element of the crime.
State v. Jacobs, 504 So.2d 817, 820 (La. 1987). In Jacobs, the supreme court noted the obligation of the reviewing court when examining sufficiency of circumstantial evidence:
When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. An evaluation of the reasonableness of other hypothesis of innocence provides a helpful methodology for determining the existence of a reasonable doubt. The reviewing court does not simply determine whether there is another possible hypothesis which could explain the events in a exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
Jacobs, 504 So.2d at 821, n. 6.
We conclude that, after the facts adduced at trial are viewed in a light most favorable to the prosecution, there is no alternative hypothesis that is sufficiently reasonable that would prohibit a reasonable juror from finding guilt beyond a reasonable doubt.

Motion to Suppress
The defendant claims the trial court erred in failing to suppress evidence seized at the time of his arrest. The trial court denied the defendant's Motion to Suppress after a contradictory hearing on November 27, 1995. The defendant claimed there was no arrest warrant for him, therefore, the search of the defendant went beyond the scope of a permissible search incidental to arrest.
The fourth amendment to the federal constitution and art. 1 § 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.Code Crim.P. art. 215.1, as well as by both state and federal jurisprudence.
State v. Belton, 441 So.2d 1195, 1198 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984) (citing Terry v. State of Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); See also State v. Andrishok, 434 So.2d 389 (La.1983); State v. Shoemaker, 569 So.2d 169 (La.App. 1 Cir.1990), writ denied, 572 So.2d 73 (La.1991).
It has been held that reasonable cause for an investigatory detention is less than probable cause and must be determined by the circumstances of the case by examining whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Williams, 416 So.2d 91 (La.1982). "The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct." State v. Elias, 509 So.2d 86, 88 (La.App. 1 Cir.), writ denied, 512 So.2d 464 (La.1987).
"Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the person to be arrested has committed, or is committing an offense." State v. Banks, 590 So.2d 836, 838 (La.App. 2 Cir.1991) (citing State v. Jarmon, 543 So.2d 93 (La.App. 1 Cir.), writ denied, 551 So.2d 1334 (La.1989)).
While Deputy David Smith was taking Ms. Brown to the police station, Ms. Brown pointed out the defendant, who was riding his bicycle, as the person who robbed her. We conclude that this identification of the defendant by Ms. Brown was sufficient to give Deputy Smith probable cause to believe that the defendant was the individual who had committed the robbery.
La.Code Crim.P. art. 213(3) provides, in pertinent part:

*246 A peace officer may, without a warrant, arrest a person when:
....
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer
...
"When a lawful arrest is made on probable cause, a warrantless search incident thereto of the person and area in his immediate control is permissible." Andrishok, 434 So.2d at 391. See also State v. Kennedy, 569 So.2d 242, 244 (La.App. 1 Cir.1990), writ denied, 575 So.2d 387 (La.1991).
We conclude that since the defendant's arrest was lawful and based on probable cause, there was no need for a warrant to search either the defendant or the immediate surrounding area. Accordingly, this assignment is without merit.

Motion to Withdraw
The defendant also claims that the trial court erred in refusing to grant his trial counsel's Motion to Withdraw. On July 27, 1995, the defendant's appointed trial counsel, Dan B. Cornett, filed a Motion to Withdraw as Counsel of Record on the basis that he had previously prosecuted the defendant in 1988 when he was District Attorney for LaSalle Parish. Additionally, on August 9, 1995, the defendant sought to have Mr. Cornett removed by filing a pro se Motion to Withdraw as Counsel of Record. The court minutes of August 3, 1995, indicate that argument was heard on the Motion to Withdraw as Counsel of Record and that a copy of the minutes from the 1988 matter was offered, objected to, and proffered. Ultimately, Judge Mauffrey denied the motion.
After trial, Mr. Cornett again filed a Motion to Withdraw as Counsel of Record. On July 1, 1996, Judge Mauffray heard the motion and denied it based on the fact that Mr. Cornett had not actually prosecuted the defendant, but had only signed a bill of information. Judge Mauffray stated:
Insofar as allowing you to withdraw as counsel of record, well, you still haven't shown to the court where there was any prejudice to the defendant in this case by virtue of you being the district attorney who happened to sign the bill of information. You did not prosecute the case and you did not secure the conviction. To accept your argument would mean that in LaSalle Parish because you were the district attorney for six years in any [sic] every person who might have been considered for prosecution or anybody who was processed through your office for anything, you would automatically have a conflict. The court simply doesn't believe that this is the criteria or the standard by which legal representation has to be judged in according to theyou knowdisciplinary rules and the codewell, professional responsibility requirements for practicing law. The court doesn't find that the accident of the fact that the bill of information in one of the prior convictions was signed by you in any way prejudiced Mr. Jones in the [sic] what the court views as an excellent defense you made.
If a conflict of interest between the defendant and his attorney is raised before trial, the standard set forth in Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) applies. In Holloway, the defendant raised the issue of ineffective counsel due to a conflict of interest before trial. The Supreme Court held that when the claim is raised before trial, a trial judge is required to either appoint separate counsel or ascertain whether the risk of a conflict of interest is too remote to warrant separate counsel. Id. See also State v. Wille, 595 So.2d 1149, 1153 (La.1992), cert. denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). If, however, the conflict is raised after trial, the standard set forth in Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333, (1980) is applied. Wille, 595 So.2d 1149. Under this standard, a defendant must establish that an actual conflict of interest exists which adversely affects his lawyer's performance. Cuyler, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333. See also Wille, 595 So.2d 1149.
In State v. Kahey, 436 So.2d 475 (La.1983), the Louisiana Supreme Court accepted the definition of an actual conflict of interest set forth in Zuck v. Alabama, 588 F.2d 436, 439 *247 (5th Cir.1979), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979), "`If a defense attorney owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists....'" Kahey, 436 So.2d at 484. If a defendant does not establish a conflict of interest, he must then demonstrate he was prejudiced by his lawyer's performance.
The record reflects that Mr. Cornett represented the defendant vigorously before and during trial. He filed numerous pre-trial discovery motions, actively participated in all hearings, and cross-examined all witnesses presented by the State. We find that the trial court did not err in denying the Motions to Withdraw since the defendant did not establish a conflict of interest nor prejudice resulting from the representation by Mr. Cornett.

Application of La.R.S. 15:529.1
The defendant, in a pro se assignment, claims that the trial court committed reversible error in sentencing the defendant to a mandatory term of life imprisonment without benefit of parole, probation, or suspension of sentence by retroactively applying La.R.S. 15:529.1.
The form of La.R.S. 15:529.1(A)(1)(c)(ii) which was in effect on June 29, 1995, the date of the commission of Defendant's last crime, states:
If the fourth or subsequent felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
La.R.S. 14:2(13) lists both second degree battery and simple robbery as crimes of violence. The defendant was previously convicted of simple burglary, second degree battery and simple robbery.
We conclude that this assignment is meritless since the version of La.R.S. 15:529.1 which was in effect at the time of the commission of Defendant's last crime, specifically states that Defendant is to be imprisoned for the remainder of his natural life without benefit of parole, probation or suspension of sentence.

Opportunity to Impeach Witnesses
The defendant claims that the trial court committed reversible error by denying him the right to confront his accusers by impeaching the testimony of Ms. Brown through the testimony of Detective Windham.
The defendant's attorney asked Detective Windham, on cross-examination, "Did she also state to you that Charles Jones ran out of the front door of the Airport Grocery?" District Attorney Walters objected on the basis of hearsay. The court stated:
It is hearsay. You objected once to the hearsay nature of it and I sustained that objection and I'm going to sustain his objection because it's the same thing. Now, Mrs. Brown is on call and she's still on call in this case. If you want to recall her to ask her these very same questions which would be the best evidence, then that's fine. This deputy will be on call too. And for that very purpose I'll instruct both counsel that until the defendant is satisfied that he's had his opportunity to examine and cross examine not only Mrs. Brown, but also after Mrs. Brown, then this deputy, then I'll keep him under the rule too and available for you to ask. But, for right now,for right now the objection is sustained because you're not trying to impeach her testimony because it hasn't been asked and it's hearsay.
The defendant's attorney claimed he asked Ms. Brown about the robber's clothing and that her testimony was inconsistent with the contents of Deputy Windham's supplemental report. He also wanted to bring out the point that Ms. Brown testified that the defendant had walked quickly out of the store whereas Deputy Windham's report indicates that Ms. Brown stated that Defendant ran out of the store.
The judge stated that, with a prior inconsistent statement, the person's attention has *248 to be directed to that particular point. However, in this particular instance, the defense counsel was not specific about some of the particular points about which he wished to ask.
La.Code Evid. art. 607 provides that a defendant may attack the credibility of a witness through the use of extrinsic evidence which contradicts the witness' testimony, provided that a proper foundation is laid for such extrinsic evidence pursuant to La.Code Evid. art. 613. La.Code Evid. art. 613 states that extrinsic evidence is admissible if the defense has fairly directed the witness' attention to the statements, and the witness has been given the opportunity to admit the fact and failed to do so.
State v. Smith, 96-261, p. 36 (La.App. 3 Cir. 12/30/96), 687 So.2d 529, 553.
We find that the trial court was correct in concluding that the defense counsel did not lay a proper foundation to ask Detective Windham questions about Ms. Brown's testimony since he had not previously asked Ms. Brown these questions, which would be necessary in order to use Detective Windham's testimony to impeach her statements. Accordingly, this assignment is without merit.

Qualified Questions
The defendant, once again in a pro se assignment, claims that the trial court committed reversible error when it failed to allow the defendant to ask Ms. Brown, Detective Windham, and Sheriff Robert Garifo, specific qualified questions concerning precise points of information brought before the jury during the course of the trial.
The defendant wanted to impeach Ms. Brown's testimony by questioning Detective Windham and Sheriff Garifo about documents which were not identified by the defendant. He listed four (4) points which he wished to bring out at trial. First, the defendant stated that Dan Brown, the owner of Airport Grocery, submitted an itemized list to the Sheriff's Department which stated "CASH IN DRAWER $125.00." The defendant claims that Ms. Brown stated that a little over $300.00 was taken. Thus, the defendant contends that the only money actually taken from the cash register by the robber was $125.00 cash from the drawer. We conclude that there is no evidence that the defendant attempted to ask any witness about this inconsistency nor was the list introduced or admitted into evidence; therefore, the defendant cannot now raise this issue on appeal.
Next, the defendant asserts that he wanted to question Ms. Brown, Detective Windham, and Todd Cooper regarding how the alleged robber left the Airport Grocery. We do not find that the defendant asked Ms. Brown on cross-examination about the manner in which the robber left the store. The defendant was free to call Ms. Brown during his case-in-chief in order to ask her these questions, however, the defendant failed to do so. Accordingly, we find that the defendant waived his right to address her testimony on appeal. Mr. Cooper, a witness who entered the store while the robber was leaving, testified that the robber ran out of the store. Since the defendant did not question Ms. Brown regarding the manner in which the robber left the store, Mr. Cooper's testimony did not impeach Ms. Brown. Mr. Cooper also stated that the robber had on a kind of a sweatshirt. As Ms. Brown testified that the defendant was wearing a sweatshirt, this statement by Mr. Cooper could not have been used for impeachment.
The defendant also claims that he should have been allowed to question Sheriff Garifo, who also responded to the call, about what prompted him to drive to the Good Pines area where Defendant lived with his girlfriend. Sheriff Garifo testified, "Because I was told who the offender was and I knew where the offender stayed and usually what he washis mode of transportation." We find that this question was asked and answered.
With regard to Detective Windham's testimony as it relates to Ms. Brown's description of the robber's clothing, this issue was resolved above. Accordingly, we do not again address this issue.

Suppression of the Identification of the Defendant
In his final pro se assignment, the defendant claims the trial court committed *249 reversible error in failing to suppress the tainted identification of Defendant. On November 27, 1995, Judge Mauffray denied Defendant's Motion to Suppress.
"A defendant attempting to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure." State v. Prudholm, 446 So.2d 729, 738 (La.1984).
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Supreme Court considered five factors in determining whether an identification was suggestive: (1) the witness's opportunity to view the defendant at the time the crime was committed; (2) the degree of attention paid by the witness during the commission of the crime; (3) the accuracy of any prior description; (4) the level of the witness's certainty displayed at the time of the identification; and (5) the length of time elapsed between the crime and the identification.
By applying the Manson factors to the present case, we conclude that the identification procedure did not produce the likelihood of misidentification. During direct examination at trial, Ms. Brown stated that she recognized the defendant by his shape, build, walk, and talk. When asked about her state of mind during the robbery, Ms. Brown stated, "to try to stay alive and to be able to identify who did it.... I was focused on who was standing there with a gun on me, yes sir."
Ms. Brown identified the defendant's clothing as brown high-top work boots, pants with a white label sticking out, over a second pair of grayish black "britches," a T-shirt with a white neckband, and a sweatshirt over the T-shirt. She said that the defendant has a "different" voice and she knows it and recognized it as his voice. Ms. Brown testified that she had seen the defendant two days before the robbery on a bicycle and had spoken to the defendant around five times in the last ten years.
Deputy Smith testified that when he arrived at the scene, Ms. Brown told him that Charles Jones committed the offense. He also stated that, while on the way to the police station after the robbery, he and Ms. Brown saw the defendant riding his bicycle along Highway 84 East and Ms. Brown identified Charles Jones again as the robber. We conclude that these facts show that the identification was not suggestive, therefore, the trial court did not err in denying the defendant's Motion to Suppress.

Sufficiency of the EvidenceHabitual Offender
The defendant claims that the trial court erred in finding that the State presented sufficient evidence to adjudicate the defendant a habitual offender since one of the prior convictions was imperfect. The defendant maintains that he was not informed of his right to confront and cross examine his accuser during his guilty plea to simple burglary charge in 1986. Before the defendant's habitual offender hearing, he filed Particular Objections to Bill of Information # 54,340, in which he challenged his 1986 simple burglary conviction and his 1990 second degree battery conviction. The defendant did not raise the issue of his second degree battery conviction on appeal, therefore, this contention was abandoned pursuant to Uniform Rules, Courts of Appeal Rule 2-12.4.
When a defendant objects to the evidence the State introduces to prove a prior conviction, the State has the burden of proof to demonstrate an "affirmative showing in the record that the accused at the time he entered his guilty plea knowingly and voluntarily waived his constitutional privilege against self-incrimination, right to trial by jury, and right to confront his accusers." State v. Shelton, 621 So.2d 769, 777 (La.1993) (citing State v. Tucker, 405 So.2d 506, 509 (La.1981)).
Louisiana law has consistently held:
[T]hat in order to enhance a sentence with a prior guilty plea, the State bears the burden of proving the guilty plea was constitutionally taken, and, to meet its burden, the State must introduce a contemporaneous record of a Boykin examination which demonstrates the guilty plea was free and voluntary and which includes a waiver of the three constitutional rights specified in Boykin.

*250 Shelton, 621 So.2d at 774 (footnote omitted).
"Requiring the State to meet its burden of proof in an habitual offender hearing only through the use of a `perfect' transcript of the guilty plea colloquy, however, has never been specifically required by this court." Shelton, 621 So.2d at 775.
The Louisiana Supreme Court has found a variety of modes of proof, other than a "perfect" transcript, to be sufficient to meet the State's burden of proof in a habitual offender hearing. "The dominant thread running through the cases appears only to require that the court must determine from the entire record that the defendant was informed of and specifically waived his three Boykin rights." Shelton, 621 So.2d at 776.
The court has allowed a guilty plea form to supplement an "imperfect" transcript of the colloquy, has found a minute entry alone was sufficient to prove a defendant was informed of and waived his rights, and has held that the State has met its burden of proving a prior guilty plea where it submitted a very general minute entry and a well-executed plea of guilty form. Shelton, 621 So.2d 769.
In the case sub judice, the transcript from the guilty plea dated July 11, 1986, contains the plea colloquy:
BY MR. SHANNON [Assistant District Attorney]:
Mr. Jones, you have gone over this Petition to Enter a Plea of Guilty with your attorney, have you not?
BY DEFENDANT:
Yes.
BY MR SHANNON:
And this is your signature on the last page of that petition, is it not?
BY DEFENDANT:
Yes.
BY MR. SHANNON:
The Court must advise you of certain rights you have now, Mr. Jones.
BY THE COURT:
All right, Mr. Jones, you understand you have the right to plead not guilty and go to trial on the charge against you?
BY DEFENDANT:
Yes.
BY THE COURT:
Do you understand that at that trial you would have the right to a trial by jury?
BY DEFENDANT:
Yes.
BY THE COURT:
You'd have the right to assistance of counsel. You'd have the right for any witnesses you may wish to call to be summoned to court to testify on your behalf. You have the right against self-incrimination, or the right not to testify, and no presumption as to your failure to testify would arise. Do you understand all of that, sir?
BY DEFENDANT:
Yes.
BY THE COURT:
Do you wish to waive all of the rights and enter a guilty plea?
BY DEFENDANT:
Yes.
BY THE COURT:
Are you pleading guilty because you are in fact guilty of the charge against you?
BY DEFENDANT:
Yes.
BY THE COURT:
All right, and you have executed the Petition to Plead Guilty, and that's been gone over with you with your attorney, Mr. Voltz?
BY DEFENDANT:
Yes.
BY THE COURT:
And you understand all of the matters in that Petition to Enter a Plea of Guilty?
BY DEFENDANT:
Yes.
BY THE COURT:
All right, sir. The Court will accept the guilty plea, and I will set sentencing for Monday morning at 9:30.
*251 The defendant claims the trial court did not inform him of his right to confront his accusers before the 1986 guilty plea. While the above colloquy does not indicate that the trial judge specifically informed the defendant of this right, the defendant signed a Petition to Enter Plea of Guilty and Order for the simple burglary charge. This form contained all the rights which defendant waived upon entering a plea of guilty, including his right to confront his accusers. Additionally, attached to the plea form is a Certificate of Counsel signed by Defendant's attorney, Gus Voltz, and the Assistant District Attorney, Greg Fowler. This Certificate of Counsel certifies that the defendant's attorney explained his rights to him and found that the defendant understood those rights and knowingly waived them.
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of his plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript ... the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
State v. Lassere, 95-1009, p. 14-15 (La.App. 5 Cir. 10/1/96), 683 So.2d 812, 820 (quoting Shelton, 621 So.2d at 780).
We conclude that the State submitted sufficient proof of the existence of the prior guilty plea and that the defendant was represented by counsel at the time the plea was taken. The State introduced evidence in the form of the minute entry, transcript, and plea form, which detailed an adequate waiver of rights by Defendant. Therefore, this contention is without merit.

DECREE
For the foregoing reasons, the convictions and sentence of Defendant, Charles R. Jones, are affirmed.
AFFIRMED.
NOTES
[1] This docket number, CR96-1581, involves the defendant's conviction for first degree robbery, and was consolidated with CR96-1584 which is the appeal taken from the adjudication of the same defendant as an habitual offender. We discuss both appeals in this opinion.