542 So.2d 181 (1989)
STATE of Louisiana, StateAppellee,
v.
Barry CHAVIS, DefendantAppellant.
No. CR88-535.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*182 Jerry Page Harmon, Crowley, for defendant-appellant.
Glenn B. Foreman, Asst. Dist. Atty., Crowley, for plaintiff-appellee.
Before FORET, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
On November 6, 1981, the defendant, Barry Chavis, was charged by grand jury indictment with forcible rape, a violation of La.R.S. 14:42.1. On November 18, 1987, defendant was convicted of the charged offense by a twelve member jury. Defendant was subsequently sentenced on March 8, 1988, to serve 40 years at hard labor with the first two to be served without benefit of probation, parole or suspension of sentence. The defendant appeals based upon five assignments of error.
FACTS:
On October 1, 1981, Mrs. Mire was approached by a man she claims was the defendant and asked for a glass of water. Upon returning the glass, the offender forced his way into Mrs. Mire's home and threw her on the couch. He then asked Mrs. Mire for money. She testified that she told the offender she had money in her purse which was on the table in the living room. He then led Mrs. Mire to her bedroom where he proceeded to rape her. The offender then left the scene of the crime.
Mrs. Mire described the offender as a black man about 5'7" or 5'8" tall and weighing 140 to 150 pounds. She also claimed that the perpetrator had a beard, and was in a blue car. Mrs. Mire was then taken to the emergency room of Crowley American Legion Hospital. She was examined by Dr. Harold Sabatier who concluded that Mrs. Mire had been recently raped. Dr. Sabatier also completed a rape kit *183 which was then sent to the Acadiana Crime Laboratory to be analyzed. The testimony of the analyst indicated that semen was found in the vaginal smears indicating recent sexual intercourse.
On October 2, 1981, the detective in charge of the investigation, Wayne Melancon, brought a photo lineup to Mrs. Mire. The lineup consisted of five photographs, one of which was the defendant. Detective Melancon testified that Mrs. Mire picked the defendant out of the lineup. She also told police that the defendant was driving a blue car. The car was subsequently found at an auto repair shop in Lafayette. The work order form contained defendant's signature. The car belonged to a workmate of the defendant and the defendant frequently received rides to work from this friend. Also, testimony indicates that the defendant borrowed the car on October 1st.
There was an extensive search for the defendant for some six years. The record indicates that the last time the defendant was seen was around the time of the rape incident. After October 1st, the defendant never went back to Oilfield Heavy Haulers, the place where he was employed, and failed to pick up his last paycheck. The defendant was finally located in Chicago where he had recently been convicted of attempted sexual assault and aggravated battery. Defendant was extradited to stand trial for the rape of Mrs. Mire. Finally, Detective Lafosse testified that the defendant made a statement to him prior to trial indicating that he (defendant) was glad it was over because he was tired of running.
ASSIGNMENT OF ERROR NO. 1:
The defendant contends that the trial court erred in denying his motion to suppress the identification made in the pre-trial photo line-up. The defendant claims that the lineup was unduly suggestive because his photograph differed from the other four.
The record indicates that the officers put together the photo lineup based upon a description given to them by the victim. The photographs were "mug shots" which were on file at the sheriff's department. The officers claimed that they tried to match the photos to the description of the assailant. The description given to them was that of a black male who was 5'7" or 5'8" and weighed approximately 140-150 pounds. They were also told that the offender had a beard. The defendant contends that his photograph was darker than the others and that he was only one of two men who had full beards in the photographs. The trial judge denied the motion finding that the lineup was not unduly suggestive.
A defendant who seeks to suppress an identification must prove that the identification itself was suggestive, and that there was a likelihood of misidentification as a result of this procedure. State v. Lowenfield, 495 So.2d 1245 (La.1985); State v. Prudholm, 446 So.2d 729 (La. 1984). In this case the defendant failed to meet both prongs of the test.
First, photographs employed in a lineup are suggestive if they display the defendant so singularly that the witness's attention is unduly focused upon the defendant. State v. Smith, 430 So.2d 31 (La. 1983). Also, with respect to the photographs, all that is required is that there is sufficient resemblance among the pictures to reasonably test identification. In this case, all of the five photographs used were pictures of black males with similar complexions. All of the men sported some type of beard, although not all of them had a "full beard." However, the trial testimony indicates that the victim never claimed that her assailant had a full beard. She only indicated that he had a beard. Although defendant's photo is somewhat darker in texture than the others, this would not seem to draw one's attention to this particular photograph (defendant's). Thus, we find that the photograph of the defendant used in the lineup is not unduly suggestive.
Second, the defendant must prove that there was a likelihood for misidentification from the photo lineup. In Mason v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed. 2d 140 (1977), the Supreme Court considered five factors in order to determine *184 whether the identification would be reliable. The factors are: (1) witness's opportunity to view the defendant at the time the crime was committed; (2) degree of attention paid by the witness during the commission of the crime; (3) accuracy of any prior description; (4) level of the witness's certainty displayed at the time of identification; and (5) length of time elapsed between the crime and the identification.
Considering the case at hand, we find that the identification procedure did not produce the likelihood of misidentification. Mrs. Mire claimed that the defendant was in her presence for almost 30 minutes. Also, Mrs. Mire was face-to-face with the defendant during the rape, so she was able to get a good, long look at the defendant. The victim claims she had her glasses on during the assault. Although the description given to the police was a general description, it must be noted that the victim was in an extremely emotional state after the incident. Also, the victim made a positive identification from the lineup the day after the rape occurred. Detective Melancon testified that Mrs. Mire's identification was almost immediate and that she was absolutely positive the defendant was her attacker. In view of the Mason factors, we find that the identification was reliable.
A trial judge's determination on the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. State v. Bickham, 404 So.2d 929 (La.1981). In this case, the evidence reveals that the judge did not abuse his discretion. The photo lineup was not unduly suggestive nor did it lead to a possibility of misidentifying the offender. Thus, we reject this assignment of error.
ASSIGNMENT OF ERROR NO. 2:
The defendant contends that the trial court erred in denying defendant's motion for a pre-trial physical identification lineup, or alternatively, to allow defendant to be seated in the courtroom other than at defense table. The defendant argues that because of the victim's age (79) and because six years had elapsed since the offense, the victim should be required to identify the defendant out of a lineup again.
While an accused has no constitutional or legal right to such a lineup, the trial court has broad discretion in deciding whether to order one and in determining the manner in which the identification will be conducted. State v. Talbot, 408 So.2d 861 (La.1981); State v. Boettcher, 338 So.2d 1356 (La. 1976). In Boettcher the court indicated that a pre-trial lineup might be necessary if identity is a material issue and there exists a reasonable likelihood of mistaken identity.
The trial judge felt that the mere passage of time coupled with the affirmative pre-trial lineup identification which has not been suppressed did not justify the relief requested. In evaluating the ruling the court should consider the five factor reliability test of Mason v. Brathwaite, supra, as discussed in the first assignment of error. Since the identification of the defendant by the victim from the photographic lineup was reliable, it was not necessary for the judge to grant a pre-trial physical lineup. Therefore, the judge did not abuse his discretion in denying defendant's motion.
Defendant also argued that he should have been allowed to sit in the courtroom at a place other than at defense table. The fact that the defendant occupies a place at defense counsel's table may suggest to a witness that the defendant is the perpetrator of the offense. However, defense counsel has ample opportunity to cross-examine the witness in order to test the sufficiency of the in-court identification. State v. Drew, 360 So.2d 500 (La. 1978); State v. Sensley, 460 So.2d 692 (La. App. 1st Cir.1984), writ denied 464 So.2d 1374 (La.1985). In this case, defense counsel made an effort to discredit the identification made by the victim. In fact, the record indicates that the victim had a hard time describing her attacker and finally indicated that she would describe him "as he is sitting by you right there." However, this is to be considered by the jury in weighing the testimony of the in-court identification. *185 State v. Drew, supra. Thus, we find that the trial judge did not abuse his discretion in denying the motion and we therefore reject this assignment of error.
ASSIGNMENT OF ERROR NO. 3:
The defendant contends that the prosecuting attorney arbitrarily used peremptory challenges to exclude blacks from the petit jury which effectively denied defendant's right to a fair and impartial jury.
The record reflects that there were thirty prospective jurors examined during voir dire. Of the thirty, four were black (according to defense brief). The state used peremptory challenges to exclude all four of the black jurors. The defendant claims that this action by the prosecuting attorney violated his constitutional rights. He claims that the case should be remanded for an evidentiary hearing in order for the state to give a neutral explanation for excluding the prospective jurors.
In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court enunciated a new evidentiary standard for establishing purposeful discrimination arising out of the use of peremptory challenges for jury selection. Batson requires that the defendant must establish a prima facie case of purposeful discrimination in the selection of the petit jury. First, defendant must show that he is a member of some cognizable racial group and that the prosecutor used peremptory challenges to exclude members of this group. Second, defendant can rely on the fact that the practice of peremptory challenges allows those who have a mind to discriminate to discriminate. Finally, the defendant must show that these facts and other circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors on the basis of race.
This is the first time that defendant raised the issue of whether he was denied the right to a fair and impartial jury. Defense counsel failed to object to the composition of the jury at the time of selection. Art. 841 of the Code of Criminal Procedure provides in pertinent part, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence." The purpose of this rule is to allow the trial judge the opportunity to rule on the objection and thereby cure the error. State v. Ratcliff, 416 So.2d 528 (La.1982). Otherwise, we would be allowing the defendant to gamble on a favorite verdict, and then upon conviction, he would bring up errors which could have been corrected earlier.
In State v. Spencer, 446 So.2d 1197 (La. 1984), the Supreme Court applied article 841 in a situation where there was a challenge to the jury composition. In Spencer, the defendant asked for a mistrial based upon the improper exclusion of blacks from the jury. The court felt that the objection was waived since it was not timely presented. If the court found an objection untimely when it was brought during the trial, then it certainly will be untimely when raised on appeal for the first time.
It should be noted that Batson v. Kentucky, supra, was decided after State v. Spencer, supra. However, Batson would not seem to change the result. Batson formulated a new evidentiary standard which the defendant must meet in order to prove his case on discrimination. However, Batson did not change the threshold question of whether the defendant objected to the exclusionary practices of the prosecutor. Before Batson, it was unconstitutional for the state to purposefully exclude one race from being members of a jury. But even then, a defendant was required to object to the practice in order to preserve his right to raise the issue on appeal. State v. Spencer, supra. Having made no objection at trial, defendant cannot for the first time on appeal complain of denial of equal protection rights in the jury selection process. State v. Evans, 506 So.2d 1283 (La.App. 2nd Cir.1987).
Thus, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 4:
The defendant contends that the evidence presented at trial was insufficient to support a conviction of forcible rape. The defendant claims that there was not *186 enough accuracy as to the identity of the attacker in order to prove he was the offender.
The standard of appellate review in cases involving challenges to the sufficiency of evidence is whether, viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 400 So.2d 1370 (La.1981).
La.R.S. 14:42.1 provides:
"A. Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape."
The offense of forcible rape can be broken down into the following elements: (1) anal or vaginal intercourse with victim; (2) victim was not the spouse of the offender; (3) victim did not consent; and, (4) victim is prevented from resisting by force or threats of violence under circumstances where the victim reasonably believes that resistance would not prevent the rape.
The record reveals that the victim had sexual intercourse. There was testimony given by Dr. Sabatier which indicated that the victim had been raped. Also, there was testimony of the analyst at the crime lab which indicated that the victim had sexual intercourse on October 1, 1981. The victim testified that she was not married to the defendant and that she did not consent to the rape. In fact, she testified that she thought the defendant was going to kill her. The victim was 73 years of age at the time of the incident. This would indicate that it would have been useless for her to resist the defendant's attacks. He was much too strong for the victim.
The defendant seems to rely solely on the fact that the victim was mistaken as to the identity of the offender. In order to meet the standard set forth in Jackson v. Virginia, supra, the state was required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La. 1983). In this case, the victim testified that she encountered the defendant for approximately 30 minutes. She stated that she had her glasses on the entire time. She gave a general description of the attacker and the vehicle he was driving. The victim also identified defendant's photograph out of a photo lineup the day after the attack. Although six years had passed, the victim pointed the defendant out as her attacker. Also, there was testimony of police officers indicating that the defendant was the man Mrs. Mire picked out of the photo lineup. There was also testimony presented that the defendant was driving a blue car on October 1st. It would seem that the state met its burden in proving the identity of the offender as the defendant. Therefore, considering the evidence in the light most favorable to the prosecution the defendant could have been found guilty beyond a reasonable doubt.
Thus, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 5:
The defendant contends that the sentence imposed was excessive and constituted cruel and unusual punishment in violation of Louisiana Constitution Art. I, Section 20.
It should be initially noted that a sentence imposed although within the statutory limit, may still violate the defendant's constitutional right against excessive punishment, and the excessiveness of the sentence is reviewable by the appellate courts. La. Const. Art. I § 20; State v. Sepulvado, 367 So.2d 762 (La.1979). The statutory guidelines of Article 894.1 furnish criteria by which the reviewing court can measure whether a sentence is excessive. Sepulvado, supra; State v. Cox, 369 So.2d 118 (La.1979). To constitute an excessive sentence the penalty imposed must be so grossly disproportionate to the crime committed in light of the harm caused to society as to shock our sense of justice. State *187 v. Cann, 471 So.2d 701 (La.1985); State v. Bonanno, 384 So.2d 355 (La.1980).
The first step in reviewing the sentence is to determine whether the trial judge considered the statutory guidelines of Article 894.1 of the Code of Criminal Procedure. The record indicates that the judge considered the seriousness of the offense, the victim of his crime, his prior criminal history, the possible effect of probation, and the pre-sentence report. Thus, the record does reflect that the trial judge considered the statutory guidelines.
Second, even though the guidelines were considered, the sentence may still be unconstitutionally excessive. State v. Sepulvado, supra. The defendant was sentenced to serve 40 years at hard labor with the first two years to be served without benefit of probation, parole, or suspension of sentence. This is the maximum sentence allowed by law. In his reasons for sentencing, the judge stated the following:
"Okay. Berry Chavis, this court has before it an offender who was found guilty after a jury trial.
A pre-sentence investigation was ordered, and a copy of which I am going to place in the record under seal. Now, upon perusal of such pre-sentence investigation, it is determined that you have a long history of criminal activity and you are a multi-felony offender.
The record further reveals that three (3) of your prior felony convictions were sexually related. The other being an aggravated burglary. All attacks have been directed toward females; two (2) of whom were over seventy (70) years old at the time.
The record reveals that you have previously had the benefit of probationary process to no avail as the offender has continued to commit one offense after the other. In each instance, the offender has physically abused his victim. I consider you to be a very violent and dangerous person. The offender is single, and claims that he has no children. However, according to a pre-sentence investigation completed by the Cook County Probation Department, you have fathered (3) children, although, it does not appear that any of these children are dependent upon you for support.
It is, therefore, felt that your incarceration presents no undue hardship to others. You have been diagnosed with a combination of Chronic Psychosis, retardation, plus some degree of malingering. There does not appear to be any other significant mitigation factors in your case.
I am convinced that you are a hard core, dangerous criminal. And you will continue the life of crime as long as you are free in society. In order to protect society from this career criminal, YOU, it is the Court's conviction that you must be incarcerated as the only alternative to a continuing life of crime and the victimization of society.
Accordingly, it is the sentence of this court that you, Barry Chavis, be, and are hereby sentenced to forty (40) years imprisonment at hard labor in the custody of the Louisiana Department of Corrections. And as required by LSA R.S. 14:42.1, I must specify that at least two (2) years of sentence imposed is to be without benefit of probation, parole or suspension of sentence."
The pre-sentence investigation report indicates that the defendant had been previously convicted of attempted rape, aggravated burglary, attempted robbery, attempted criminal sexual assault, and aggravated battery. The report also indicates that probation has not previously worked for defendant. Also, the report reveals that the victim is now a frightened woman who is scared of all strangers. The crime has had a definite detrimental effect on the victim.
In this case, the sentence given does seem to make a measurable contribution to the acceptable goals of punishment. The sentence is not arbitrary and purposeless, or grossly disproportionate to the severity of the crime. Rape is a very serious offense, and, in this case, the rape was of a defenseless 73 year old woman. Also, the defendant has had a long criminal history which included various sexual offenses.
*188 The trial judge is given wide discretion in imposing sentences within the statutory limits and they should not be set aside absent manifest abuse of discretion. State v. Davis, 449 So.2d 452 (La.1984); State v. Joe, 502 So.2d 270 (La.App. 3rd Cir.1987). In this case, considering the nature of the offense, the character of the defendant, and the circumstances of the victim, this sentences does not seem to be excessive. The trial judge did not abuse his discretion.
Thus, we reject defendant's final assignment of error.
Accordingly, for the reasons assigned, the conviction and sentence of the lower court is affirmed.
AFFIRMED.