748 So.2d 484 (1999)
STATE of Louisiana
v.
Marcus FRANCIS, Defendant-Appellant.
No. CR99-208.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1999.
*485 John F. Johnson, Catahoula Dist. Atty., Madeline Cross Gibbs, Asst. Dist. Atty., for State.
Jack Forsythe Owens, Jr., Harrisonburg, Louis L. Vogt, Jonesville, for Marcus Francis.
Marcus Francis, pro se.
BEFORE: YELVERTON, WOODARD, and PICKETT, Judges.
WOODARD, Judge.
Mr. Marcus Francis, the Defendant, robbed a convenience store, at gunpoint, on August 19, 1997. He was charged, by bill of information, with one count of *486 armed robbery in violation of La.R.S. 14:64. He was tried, convicted, and sentenced to serve thirty years at hard labor. He appeals his conviction and sentence. We affirm.

FACTS
Around 6:00 a.m. on the morning of Tuesday, August 19, 1997, Ms. Betty Hudnall, the manager of Gas Lane, a convenience store located in Jonesville, Louisiana, was in the store room, alone, getting cigarettes. Out of the corner of her eye, she saw someone entering the store in a crouched position. Initially, she thought it was someone playing a joke. However, the offender, while still in a crouched position, told her it was a holdup and demanded the money from the cash register. She testified that the offender took only $180.00 to $190.00 and then, fled the scene. Immediately thereafter, she phoned the Jonesville Police Department.
Ms. Hudnall described the offender as a small black male with medium to light skin. She testified that the offender remained in a crouched position about a foot to a foot and one-half away from her during the robbery, looking up with a gun in his hand. She described the gun as an older black revolver, and she stated that he was wearing a bandana covering the lower part of his nose, exposing only his upper cheeks, eyes, forehead, and a little of his hair. She recognized him to be the Defendant. He was a frequent customer to the store and she had known him since he was a child. She asserted that, initially, he disguised his voice by talking in a lowpitched voice. Notwithstanding, later, she recognized his voice.
Officer Gary Carlton of the Jonesville Police Department responded to her initial call. Upon arrival, she advised Officer Carlton that the Defendant robbed her at gunpoint. The officer knew him and proceeded to locate him for questioning. Officer Carlton went to Ms. Peggy Cummings' home where he resided. The officer testified that he was uncertain of the time he went to Ms. Cummings' home, but he believed it was that morning. However, the Defendant was not there. Later, on August 23, 1997, Officer Carlton searched his room with the Ms. Cummings' permission. Neither the gun used, nor the robber's clothing, were recovered. Also, none of the money taken during the robbery was found.
Around 10:00 a.m. or 11:00 a.m., on the same morning of the robbery, Ms. Hudnall saw the Defendant pull up at the end of the store to put air in a tire. He was not wearing the same clothes he had been wearing at the time of the robbery. Again, she contacted the police.
Shortly thereafter, Officer Aaron Paul Erwin of the Jonesville Police Department received a call that the Defendant had been spotted at the same convenience store putting air in a tire. The officer stopped him a few blocks from the store, advised him that he was under arrest as a suspect for an armed robbery, informed him of his Miranda rights, and asked him for consent to search his vehicle. He responded, "I didn't do it" and consented to the search. When Officer Erwin searched the vehicle, he found no evidence of the robbery.
The State charged the Defendant on September 23, 1997, by a bill of information, with armed robbery, a violation of La.R.S. 14:64. A trial by jury began on August 17, 1998.
Ms. Cummings testified that he lived with her and her sons and that, around 5:45 a.m. or 6:00 a.m. on the morning of the robbery, she saw him look out of the bedroom where he slept at her home. She explained that he shared a room in the back of her home with her son, Mr. Lorenzo Cummings and that her boyfriend spent the night before the robbery with her and had left for work around 5:30 a.m. on the morning of the robbery. She was going down the hall to the washroom at the back of the home to put clothes in the dryer when she saw the Defendant. She *487 did not see him the rest of the day. She also stated that she had received word that Officer Carlton wanted to see her. On the following Saturday, August 23, 1997, she went to the police station where she consented to a search of the Defendant's possessions. According to her, Officer Carlton searched his possessions, but took nothing from her home.
Mr. Cummings stated that the Defendant was in the room with him at Ms. Cummings' home until 7:00 a.m. on the morning of the robbery. He explained that he awoke, nearly every morning, around 6:00 a.m., because his mother's boyfriend left the house around 5:00 a.m. or 5:30 a.m. He and the Defendant awoke on the morning of the robbery about 6:00 a.m. and were lying in bed watching cartoons. He recalled seeing the Defendant peer out of the bedroom when someone, who he believed was his mother, was walking up the hallway. Mr. Cummings and the Defendant remained in their room until around 7:00 a.m., when Mr. Tihe Cummings, Mr. Cummings' brother, came to the house and asked the Defendant to help him fix a flat tire on his car. Mr. Cummings asserted that when the police picked up the Defendant, Tihe was with the Defendant and the police questioned him. Mr. Cummings maintained that he and his mother were in the room while Officer Carlton searched the Defendant's possessions. He recalled the search being the same day that the Defendant was arrested. Additionally, he testified that he had informed Officer Carlton that the Defendant had been at home until 7:00 a.m. on the morning of the robbery.
However, Officer Carlton stated that he made no search of the Cummings' home the day of the robbery, that he went by Ms. Cummings home the day of the robbery and left word with someone for her to contact him. He did not recall with whom he had spoken. The officer asserted that he searched Ms. Cummings' home on August 23, 1997 and that Mr. Lorenzo Cummings was not in the room or at the home during the search.
The Defendant denied robbing the store and claimed that he was at the Cummings' home until 7:00 a.m. on the morning of the robbery. He explained that he awoke around 6:00 a.m. that morning and began watching television. While lying in bed, he heard someone coming down the hall. He peered out of the bedroom and saw Ms. Cummings heading towards the washer and dryer. Around 7:00 a.m., Tihe came over and asked him to help him change a flat tire. He drove Tihe to his vehicle. After working on the vehicle, he and Tihe went to Gas Lane, between 8:00 a.m. and 9:00 a.m., to put air in the tire. While at the store, the Defendant purchased beer. He recalled that Ms. Hudnall was the clerk. Yet, Ms. Hudnall testified that she did not see him enter the store later that morning. Shortly after leaving the store, Officer Erwin stopped him. He consented to Officer Erwin's search of the vehicle. He confirmed that he visited the Gas Lane, roughly, two to three times a day and that Ms. Hudnall had known him since childhood.
The State and the Defendant offered into evidence as a joint exhibit a store's video surveillance tape, taken on the day and at the time of the robbery. The video was taken from four stationary video cameras located throughout the store. The videotape depicts one brief scene of a person who appeared to be a male, dressed in dark clothing with a pink or light-colored bandana covering his face, walking in a crouched position near the entrance of the store at 6:14:14 a.m. A second scene of the videotape indicates activity behind the counter. In another scene, taken at 6:14:49 a.m., the video shows the leg of a person with dark pants and shoes passing in front of the store's counter.
On August 18, 1998, the jury rendered a verdict of guilty against the Defendant for the charge of armed robbery. On September 1, 1998, he was sentenced to thirty years at hard labor. On September 21, *488 1998, the trial court filed a Judgment of Felony Conviction. His pro se Motion for an Out of Time Appeal was entered on December 4, 1998 and granted on December 21, 1998. On March 2, 1999, he filed a motion to review sentence, and a hearing was held on March 16, 1999, in which the motion was denied.

ASSIGNMENTS OF ERROR
The Defendant claims the following assignments of error:
1. Considering the evidence in a light most favorable to the prosecution the state failed to prove beyond a reasonable doubt the Defendant's guilt.
2. The trial court erred in allowing improper hearsay opinion testimony, and comments on the defendant's failure to offer any alibi or make a statement without properly admonishing the jury.
3. The sentence imposed is excessive and not in compliance with La. Code Crim. P. art. 894.1.
In a pro se supplemental brief, the Defendant argues the following assignments of error:
1. Ineffective assistance of counsel.
2. Insufficiency of the evidence to convict him.
3. That the State incorrectly stated facts in its appellate brief.

LAW

ERRORS PATENT
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing this one, we find one error patent.
The trial court failed to impose the Defendant's armed robbery sentence without benefit of parole, probation, or suspension of sentence as is required by the penalty provision of La.R.S. 14:64. Thus, he received an illegally lenient sentence. However, since the State did not complain of this error, it is not recognized. State v. Hines, 95-111 (La.App. 3 Cir. 10/4/95); 663 So.2d 199, writ denied, 95-2686 (La.2/9/96); 667 So.2d 528.

SUFFICIENCY OF THE EVIDENCE
Applying the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, the Defendant alleges that the State provided insufficient evidence to prove that he was the offender. See also State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). He does not contest that an armed robbery occurred but argues that the victim's identification of him was error, because he offered an alibi with two witnesses who corroborate his whereabouts.
The State has the burden of proving every element of the crime of armed robbery beyond a reasonable doubt. The Defendant's identity as the perpetrator of a crime is one of the elements of the crime which the State must be prove beyond a reasonable doubt. State in the Interest of A.H., 95-1094 (La.App. 3 Cir. 1/31/96); 670 So.2d 361. As the identification of the offender is the only element the Defendant contests, the other elements of the crime of armed robbery need not be addressed.
When the key issue is a defendant's identity as the perpetrator, rather than whether or not the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Jones, 96-1581, p. 6 (La.App. 3 Cir. 6/4/97); 696 So.2d 240, (citing State v. Howard, 634 So.2d 876, 880 (La.App. 1 Cir.1993), writ denied, 94-55 (La.4/7/94); 635 So.2d 1133). This standard is, also, part of an overall Jackson review. State v. Rubin, 96-1294 (La.App. 3 Cir. 5/7/97); 696 So.2d 4, writ denied, 97-1537 (La.11/14/97); 703 So.2d 1289; State v. Chavis, 542 So.2d 181 (La.App. 3 Cir.1989).
Identification by a single witness may support a conviction, despite considerble *489 alibi testimony. State v. Brian, 502 So.2d 293 (La.App. 3 Cir.1987); State in the Interest of Johnson, 461 So.2d 551 (La.App. 3 Cir.1984). The State presented sufficient evidence to negate any reasonable probability of misidentification of the Defendant as the offender. Ms. Hudnall identified him as the offender immediately following the robbery. She testified that her attention was focused on him during the robbery. Although the lower half of the offender's face was hidden, she claimed that she could see his eyes, the lower part of his nose, his forehead, and a little of his hair. Louisiana courts have previously upheld identifications of defendants whose faces were covered or partially covered. See, e.g., State v. Nicholas, 397 So.2d 1308 (La.1981); State v. Courville, 536 So.2d 661 (La.App. 3 Cir.1988). Moreover, Ms. Hudnall asserted that she knew him as a small child and that prior to the robbery, he had frequented the store. Additionally, the trier of fact accepted Ms. Hudnall's testimony that he was the offender, rejecting the alibi testimony and that of Mr. Lorenzo. The jury heard all the evidence, observed the witnesses' demeanor, and resolved the credibility issue in favor of the State.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the Defendant was the person who robbed Gas Lane's manager at gunpoint. Thus, this assignment of error is without merit.

HEARSAY TESTIMONY
The Defendant urges that the trial court erred in allowing improper hearsay, opinion testimony and improper comments on his failure to offer an alibi or to make a statement to the police.

IMPROPER HEARSAY OPINION TESTIMONY
He contends that the trial court erred in allowing Officer Carlton's opinion as to the veracity of the victim's identification of him. The following is an excerpt of his testimony to which he objected:
Q. statements? Back to your interview with Ms. Hudnall, did she express any doubt as to who the robber was?
A. She gave me the impression that she was positive that this was Mr. Francis, because she advised me that 
MR. VOGT: Your Honor, I'm going to object to that. That's blatant hearsay. Ms. Hudnall's here and has testified, and that's totally improper for him to use hearsay like this.
THE COURT: All right. You shouldn't repeat what she said specifically, but I thinkI'm going to allow him to givethis is basically a lay opinion here.
MR. VOGT: Your Honor, note my assignment for the record.
THE COURT: Okay. Note your objection, but I'm going to allow him to give an opinion as to whether or not he thought she was firm in her assertion, but do not say what they were.
A. Okay.
Q. So from your observations, was there anydid she express any doubt as to who the robber was?
A. No.
Initially, the Defendant's counsel objected to the officer's testimony as hearsay. However, the record, although unclear, seems to indicate that the trial court sustained that objection and allowed the testimony as lay opinion. Thereafter, counsel asked for his assignment to be noted. Thus, we will review the argument based upon the Defendant's counsel's objection to the officer giving his opinion.
La.Code Evid. art. 701 provides that:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and

*490 (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
Generally, a lay witness can only testify to the facts within his knowledge and not to impressions or opinions; however, a witness is permitted to draw reasonable inferences from his personal observations. State v. Williams, 353 So.2d 1299 (La.1977), cert. denied, 437 U.S. 907, 98 S.Ct. 3098, 57 L.Ed.2d 1138 (1978); State v. Davalie, 313 So.2d 587 (La.1975); State v. Alexander, 430 So.2d 621 (La.1983).
Officer Carlton testified as a lay witness. As such, he is allowed to testify regarding his assessment of the victim's identification of the Defendant as he perceived it from his own observations of the victim. Accordingly, this argument is without merit.

OFFICERS' STATEMENTS REGARDING DEFENDANT'S RIGHT TO REMAIN SILENT
The Defendant contends that the trial court improperly allowed Officer Carlton to testify regarding his exercising his right to remain silent.
The following is an excerpt of Officer Carlton's testimony complained of:
A. Just upon, I think, during the time that the subject was picked up for interview, I interviewed Mr. Francis, which he did not give no statement (sic) that he admitted to the crime or anything.
Q. Okay. So there was no statements? He didn't make any
A. No, ma'am.
At trial, the Defendant failed to make a contemporaneous objection to this line of questioning. Therefore, he cannot complain of any error which may have occurred. La.Code Crim.P. art. 841.
He also asserts that the trial court failed to properly admonish the jury on a question the State asked of Officer Erwin regarding his failure to offer an alibi, citing La.Code Crim.P. art. 770. The following is an excerpt of that exchange:
Q. Did Marcus Francis, at any time, offer you an alibi or any reason why he didn't
MR. VOGT: Your Honor, I'm going to object to that.
THE COURT: What basis, Mr. Vogt?
MR. VOGT: May I approach the bench?
THE COURT: Surely.
(BEGINNING OF BENCH CONFERENCE)
(END OF BENCH CONFERENCE)
THE COURT: All right. You're withdrawing the last question; is that correct, Ms. Gibbs?
MS. GIBBS: Yes, Your Honor.
THE COURT: All right. The last question is withdrawn. Of course, it's to be stricken from the record and ignored.
At the trial, the Defendant objected to the State's question to Officer Erwin and the trial court sustained the objection. During the trial, when an objection is sustained, unless a defendant requested, and been denied, either admonition to disregard the remark or a mistrial, he cannot complain of the alleged error on appeal. State v. Sharp, 414 So.2d 752 (La.1982); State v. Nicholas, 359 So.2d 965 (La.1978). The Defendant in the case sub judice failed to request an admonition to disregard the remark or a mistrial after the trial court sustained his objection. After the trial court sustained the objection, it instructed that the question be withdrawn, stricken from the record, and ignored. Therefore, the Defendant cannot complain of the alleged error on appeal.
Based upon the above, the Defendant's assignment of error is without merit.

EXCESSIVE SENTENCE
The Defendant contends that the sentence the trial court imposed was excessive and not in compliance with La.Code Crim.P. art. 894.1.
La.Code of Crim.P. art. 881.1 provides that:

*491 A.(1) Within thirty days following the imposition of a sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
. . . .
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, will preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
The trial court sentenced the Defendant September 1, 1998. At the sentencing, he did not orally urge specific grounds for reconsideration of his sentence. On March 2, 1999, he filed a written Motion to review sentence, and a contradictory hearing was held on March 16, 1999, in which the trial court denied the motion. At the time the motion to reconsider sentence was filed, the trial court had granted the appeal and had been divested of jurisdiction to consider the improperly filed motion. Thus, it properly denied the motion. See La.Code Crim.P. art. 916; State v. King, 95-344 (La.App. 3 Cir. 10/4/95); 663 So.2d 307, writ denied, 95-2664 (La.3/15/96); 669 So.2d 433. However, his written motion to reconsider sentence was untimely filed, as it exceeded the thirty-day period, allowed by La.Code Crim.P. art. 881.1, and the record does not reflect that the trial court set a longer period at sentencing for filing the motion. The Defendant's failure to make or file a timely motion to reconsider sentence precludes this court from reviewing, on appeal, its excessiveness or the failure of the trial court to comply with La.Code Crim.P. art. 894.1. La.Code Crim.P. art. 881.1; King, 663 So.2d 307.

INEFFECTIVE ASSISTANCE OF COUNSEL
The Defendant asserts that he was denied effective assistance of counsel due to his counsel's failure to prepare for trial.
A claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief. This allows the trial judge an opportunity to order a full evidentiary hearing on the matter. State v. Burkhalter, 428 So.2d 449 (La.1983). However, where the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. State v. James, 95-962 (La.App. 3 Cir. 2/14/96); 670 So.2d 461. A review of the record indicates that there is sufficient evidence to review the Defendant's claims.
In order to prove that counsel was ineffective, the Defendant must meet the two-pronged test the Supreme Court enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See James, 670 So.2d 461. In Strickland, the Supreme Court held that a defendant must show that: (1) his counsel's performance was deficient, and (2) his counsel's deficiency prejudiced the outcome of the trial. Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; James, 670 So.2d 461.
The Defendant contends that his counsel was deficient in the following: (1) his counsel lacked knowledge of the case because he did not handle the pretrial matters; (2) his counsel made no objections/challenges to the selection of jurors during jury selection; (3) his counsel failed to object to the irregularities in Ms. Hudnall's statement to the police and her testimony at trial; (4) his counsel failed to determine if the arrest warrant was valid and failed to suppress the arrest warrant; and (5) his counsel failed to file pre-trial motions.

COUNSEL KNEW NOTHING ABOUT THE CASE BECAUSE HE DID NOT HANDLE THE PRETRIAL MATTERS
A review of the record indicates that the Defendant's attorney was not *492 present at the arraignment or at the sentencing, but that another attorney represented him at these proceedings. However, the Defendant's counsel attended the pre-trial conference. Additionally, a review of the record reveals that his counsel was knowledgeable of the case's facts in his opening statement, his examination of his witnesses, and his cross-examination of the State's witnesses. The Defendant has failed to show how his attorney was deficient or how he was prejudiced. Thus, this argument is without merit.

COUNSEL MADE NO OBJECTIONS/CHALLENGES TO SPECIFIC JURORS DURING JURY SELECTION
The Defendant alleges that his attorney should have challenged the following jurors: (1) Houston Lavere Book, (2) Pat 0. Book, (3) Norma Jean Dunbar, (3) Lora A. Poole, (4) Berry L. Beckham, and (5) Bruce M. Davis.
La.Code Crim.P. art. 797 states, in part that:
The state or the defendant may challenge a juror for cause on the ground that:
. . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court[.]
Defense counsel has the duty of challenging for cause any member of the jury venire who displayed a ground for cause under La.Code Crim.P. art. 797. State v. Woods, 444 So.2d 1332 (La.App. 2 Cir.1984).
The law does not require that a jury be composed of individuals who are totally unacquainted with a defendant, prosecuting witness, prosecuting attorney, and witnesses who may testify at trial. The law does require that jurors be fair and unbiased. If a relationship between a prospective juror, prosecuting witness, prosecuting attorney, or witnesses, who may testify at trial, and the defendant is such that bias or prejudice may be reasonably implied, a prospective juror may be properly refused for cause. State v. Fairley, 25-951 (La.App. 2 Cir. 5/4/94); 645 So.2d 213, on rehearing, writ denied, 94-1940 (La.11/11/94); 645 So.2d 1152, writ denied, 94-2909 (La.3/24/95); 651 So.2d 287.
The Defendant asserts that Mr. Houston Lavere Book and Mr. Pat 0. Book should have been challenged because they were related to the sheriff and to each other. Relationships between jurors are not a ground for a challenge for cause. See La.Code Crim.P. art. 797. During voir dire, the State asked Mr. Houston Book if he was related to Sheriff Book and Mr. Book responded, "I'm not sure. I don't know if he's out of the other set of Books or not. I think so though." The State continued inquiring whether Mr. Book would be influenced by the sheriff having the same name as he had and Mr. Book responded, "no." The Defendant's counsel questioned Mr. Book, inquiring whether he had visited the sheriff's home, and he responded, "no." Also, Mr. Book reiterated that he was not positive if he was related to the sheriff, but if so, they were distant cousins and were not very close. Further, when the Defendant's counsel inquired whether he would believe the police officers' testimony and disregard his client's, Mr. Book responded, "no," and he *493 affirmed that he would give the Defendant a fair trial. Mr. Pat Book admitted that he was distantly related to the sheriff, but he had not visited the sheriff's home and he did not know where he lived. Upon further questioning by his attorney, Mr. Pat Book responded that he would listen to the officers' and the Defendant's testimony with a fair mind. His counsel did not challenge these jurors.
The Defendant failed to show that the prospective jurors would have been prejudiced or biased because of their kinship to the sheriff; thus, his attorney was not deficient in failing to assert a challenge against these jurors. He has failed to meet the Strickland test, and this argument is without merit.
The Defendant asserts that his attorney should have challenged Ms. Norma Jean Dunbar because she knew one of the State's witnesses, Mr. James Branch, Assistant Chief of Police. Ms. Dunbar admitted knowing Mr. Branch, but responded negatively when questioned whether this would influence how she would listen or evaluate his testimony. Further, Ms. Dunbar acknowledged that she would be capable of listening to the evidence and deciding his guilt or innocence. His counsel did not ask Ms. Dunbar any questions or assert a challenge against her. The Defendant failed to show that the prospective juror would have been influenced by her relationship to Mr. Branch; thus, his attorney was not deficient in failing to assert a challenge against this juror, and he has failed to meet the Strickland test.
The Defendant also stated that his attorney should have challenged Ms. Lora A. Poole, because, during his attorney's questioning, Ms. Poole was not allowed to finish answering the questions whether she understood that the Defendant would not have to testify against himself and whether the police could have made a mistake in the case. The following is the exchange between his counsel and Ms. Poole:
MR. VOGT: Ms. Poole, you understand that my client here doesn't have to prove himself innocent? He's presumed innocent.
MS. POOLE: Yes.
MR. VOGT: Can you listen to his side of the story with a fair and open mind?
MS. POOLE: Yes, sir.
MR. VOGT: You understand he doesn't have to testify if he doesn't want to?
MS. POOLE: I did not know that.
MR. VOGT: Well, that's the law. Can you follow the law
MS. POOLE: Yes.
MR. VOGT:if the Judge instructs you to do that? And you could hold that fact alone against him?
MS. POOLE: Pardon?
MR. VOGT: You could not hold that against him?
MS. POOLE: Right.
MR. VOGT: If he chose not to testify, can you follow that principle of law?
MS. POOLE: Yes, sir.
MR. VOGT: Do you think it's possible that the police could make a mistake?
MS. POOLE: I guess it would be possible. They'd have to have
MR. VOGT: Okay. What we're going to prove to you, Ms. Poole, we believe of course, we don't have to prove anything if we don't want to. We believe that we're going to prove to you that he wasn't at the store at the time this robbery took place. We're not questioning the fact that there was a robbery, just that he's not the person that did it. Can you listen to his witnesses with an open mind?
MS. POOLE: Yes, sir.
The record reflects that Ms. Poole answered the question whether she understood that the Defendant would not have to testify against himself. Moreover, Ms. Poole answered the question whether there was a possibility the police could make a mistake, but she was cut off after answering the question. Therefore, his *494 assertion is factually incorrect, and he has shown no ground for challenging this juror.
The Defendant claims that his attorney should have challenged Mr. Berry L. Beckham because he knew one of the State's witnesses, Officer Aaron Paul, the arresting officer. Mr. Beckham acknowledged that he knew Officer Paul. The State inquired whether he would listen to the police officer's testimony and weigh whether it was credible, and Mr. Beckham responded affirmatively. His counsel inquired whether Mr. Beckham could give his client a fair trial, and Mr. Beckham responded, "I believe I can." Additionally, Mr. Beckham acknowledged that he would listen to the Defendant's side of the story with an open mind and would not want to see the wrong person convicted. The Defendant failed to show that the prospective juror would have been influenced by his relationship to the officer; thus, his attorney was not deficient in not challenging this juror. Likewise, he has failed to meet the Strickland test and this argument is without merit.
The Defendant testified that his attorney should have challenged Mr. Bruce M. Davis because he knew the victim, Ms. Hudnall. Mr. Davis stated that he knew Ms. Hudnall, who lived down the road from his parents. His counsel questioned Mr. Davis, inquiring whether his relationship with Ms. Hudnall would be a problem, and he responded, "no." Further, Mr. Davis acknowledged that he could be fair to the Defendant, that he understood that the burden of proof was on the State, and that the Defendant did not have to prove that he did not commit the crime. The Defendant failed to show that this juror would have been influenced by his relationship to Ms. Hudnall; thus, his attorney was not deficient in failing to assert a challenge against this juror. Thus, he has failed to meet the Strickland test again, and this argument is without merit.

COUNSEL FAILED TO OBJECT TO THE IRREGULARITIES IN MS. HUDNALL'S STATEMENT TO THE POLICE AND HER TESTIMONY AT TRIAL
The Defendant urges that his attorney was ineffective in failing to object to the inconsistencies in Ms. Hudnall's testimony at trial and her statement to the police. He contends that, in her statement to the police, Ms. Hudnall stated that the robber had a scarf on his head and a bandana covering his nose, but that, at trial, she testified that the robber had only a bandana covering his nose. A review of the record reveals that the Defendant's counsel questioned Ms. Hudnall about the inconsistencies between her statement to the police and her direct testimony at trial, but that he did not specifically question her about whether the robber was wearing a scarf on his head. However, Ms. Hudnall's statement to the police was not admitted into evidence and not available for review. Even assuming that she informed the police that the robber had a scarf on his head and his attorney was deficient in failing to question her about this inconsistency, the Defendant failed to show how he was prejudiced. The record discloses that Ms. Hudnall testified that she saw most of the robber's nose, his upper cheeks, his forehead, and a little bit of his hair, indicating that she would have identified the robber even if he were wearing something on his head. Thus, the Defendant has failed to meet the Strickland test and this argument is without merit.

COUNSEL FAILED TO DETERMINE IF THE ARREST WARRANT WAS VALID AND FAILED TO SUPPRESS IT
The Defendant asserts that his attorney failed to determine if the arrest warrant was valid or if it was presented to the judge to sign the day before the robbery. We note that the arrest warrant, affidavit in support of the warrant, and the bond *495 are contained in one document. A review of this document, which was admitted into evidence as State's Exhibit 1, indicates that the date the magistrate inserted was changed in three places from August 18 to August 19.
La.Code Crim.P. art. 202 states, in pertinent part, that:
A warrant of arrest may be issued by any magistrate, and, except where a summons is issued under Article 209, shall be issued when:
(1) The person making the complaint executes an affidavit specifying, to his best knowledge and belief, the nature, date, and place of the offense, and the name and surname of the offender if known, and of the person injured if there be any;
The correct date of the offense, August 19, 1997, was typed on the affidavit, and Officer Clayton testified that he obtained the arrest warrant that morning at approximately 8:00 a.m. The Defendant offers no factual basis for the supposition that the dates on the document were changed because it was prepared the day before the actual offense was committed and not a mere error the magistrate corrected before he signed the warrant. Therefore, his argument is without merit.

FAILURE TO FILE PRE-TRIAL MOTIONS
The Defendant contends that his attorney failed to file pre-trial motions or conduct a pre-trial investigation, which resulted in him failing to discover the videotape prior to trial and failing to suppress it. The record does not contain any pretrial motions, and it further indicates that defense counsel became aware of the videotape the day before the trial and viewed it prior to trial. At trial, he admitted the videotape as a joint exhibit with the State. When the jury viewed the videotape, defense counsel objected to the victim's comments on what it depicted, and the trial court sustained the objection. In closing arguments, defense counsel pointed out how no one could tell the robber's identity from the videotape. Admitting it, as a joint exhibit, appears to have been part of the Defendant's trial strategy to support his defense that he did not commit the crime, and, on appeal, we should not second guess defense counsel's decision to do so when it appears to be a valid trial strategy. See generally, State v. Watson, 609 So.2d 1198 (La.App. 3 Cir.1992).
The Defendant has failed to show how he was prejudiced by his attorney's failure to discover the videotape sooner. Thus, he has failed to meet the Strickland test, and this argument is without merit.

INSUFFICIENCY OF THE EVIDENCE
The Defendant argues that the State presented insufficient evidence. He contends that no physical evidence was submitted and that the only evidence was Ms. Hudnall's inconsistent testimony. Because of our discussion of this issue above (see Sufficiency of the Evidence), we pretermit discussion of this pro se assignment of error.

THE STATE'S ALLEGED INCORRECT STATEMENT OF THE FACTS IN ITS BRIEF
The Defendant contends that the State's appellate brief incorrectly states facts. The only facts used in preparing the opinion were those supported by the record. Even if the State's brief incorrectly states the facts in the record, it is not a basis to reverse the Defendant's conviction. His conviction could only be overturned based upon the evidence. This assignment of error is without merit.

CONCLUSION
The Defendant was properly charged with armed robbery and convicted by a jury trial. Having reviewed his assignments of error on appeal, we affirm his conviction and sentence.
AFFIRMED.